# CHICAGO, SANTA FÉ AND CALIFORNIA RAILROAD COMPANY v. PRICE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 1456. Submitted January 8, 1891. — Decided January 26, 1891.

Where a contract with a railway company for construction work provided for monthly payments to the contractor, " on the certificate of the engineer," and that the determination of the chief engineer should be conclusive on the parties as to quantities and amounts, and where, in executing the contract each monthly account as made up by the division engineer was sent to the chief engineer, and the monthly payments were made on the certificate of the latter officer; his action in making such certificate was *held* to be a " determination " under the contract, conclusive upon the parties in an action at law, in the absence of fraud, or of such gross error as to imply bad faith.

THIS action was brought by Price, McGavock & Co., for the use of Jones, Forrest & Bodkin, to recover from the Chicago, Santa Fé and California Railroad Company the balance alleged to be due them under a written contract, made March 21, 1887, for the clearing, grubbing and masonry necessary to complete the road-bed of that company from a point on the Mississippi River to Galesburg, Illinois, a distance of about fifty miles. The parties in writing waived a jury and tried the case before the court, which made a special finding of facts.[1] There was a judgment against the railroad company. 38 Fed. Rep. 304.

---

[1] The court, from the testimony in the case, finds the following facts, to wit:

That on the 21st day of March, A. D. 1887, the plaintiffs and the defendant entered into a contract in writing, as set forth in the foregoing bill of exceptions, by which the plaintiffs agreed to do all the clearing, grubbing and masonry necessary to complete the road-bed of the defendant from the bank of the Mississippi River to Galesburg, a distance of about fifty miles; that on the 21st day of March, A. D. 1887, the plaintiffs entered into a contract with Jones, Forrest & Bodkin, which is in terms as set forth in the foregoing bill of exceptions, and that the parties have stipulated in writing as set forth in the bill of exceptions, and that the defendant was at all times aware that the plaintiffs had made the said agreement with Jones, Forrest & Bodkin and never objected thereto.

The court further finds that the work covered by the contract was, for the purpose of construction, divided by the defendant into four divisions, and that the work of each division was by the defendant put in charge of an assistant or division engineer, who was employed by the defendant and acted under the general direction of the chief engineer of the defendant.

The court further finds that the plaintiffs, through Jones, Forrest & Bodkin and their sub-contractors, performed the said work according to the terms of the said contract, and that the same has been accepted and taken possession of by the said defendant.

The court further finds that shortly after the entering into of said contract between Jones, Forrest & Bodkin and the plaintiffs the said Jones, Forrest & Bodkin sub-let all of the work on division 9 except a portion of section 119 (respecting which section there is no controversy between the parties in this suit), and that according to the said contract of sub-letting the said sub-contractors were to receive from Jones, Forrest & Bodkin 90 per cent of what was coming to Jones, Forrest & Bodkin according to their contract with the plaintiffs.

The court further finds that the said sub-contractors performed their work under the charge of the division engineers; that upon the first of each

The contract contained, among other provisions, the following:

---

month each division engineer made up and forwarded to the assistant chief engineer a paper showing his estimate of the work done on each section of his division, both according to its quantities and classifications, upon which were computed and extended in the office of the said assistant chief engineer the aggregate amounts coming to said plaintiffs, under the terms of the said contract, to the beginning of said month; that said papers were headed " monthly estimate " and bore the attestation of the division engineers, and were approved by the assistant chief engineer and chief engineer; that said certificates were all in form identical with the one set forth in the preceding bill of exceptions; that from month to month tissue copies of said certificates were delivered to the plaintiffs and payment made for the amount thereby shown to be coming to them, less 10 per cent reserved under the contract and less previous payments made; that each month the defendant sent to the division engineers in the field tissue copies of said certificates; that the plaintiffs sent their said tissue copies of said certificates to Jones, Forrest & Bodkin, together with their check for the amount coming due to them under the contract; that thereupon Jones, Forrest & Bodkin from time to time paid to their sub-contractors the amounts coming due to them according to the quantities and classifications of said certificates, and that the defendant had knowledge that the plaintiffs were paying Jones, Forrest & Bodkin, and that said Jones, Forrest & Bodkin were from time to time paying to their sub-contractors in accordance with said certificates.

The court finds that Dressler, the division engineer of division 9, sent in his last month's paper on November 1st, and that his successor, Baker, sent in a monthly paper on division 9 on December 1, which was the last month's paper on that division and which paper adopted Dressler's figures as shown in his last monthly paper and added something thereto for work done subsequently.

The court further finds that the work under said contract was substantially completed, with the exception of a small amount of grading, before the last of said monthly papers was so made up and sent to the plaintiffs, and that said plaintiffs paid what was coming to Jones, Forrest & Bodkin according to the showing of said last monthly certificate, and Jones, Forrest & Bodkin, in reliance upon the correctness of said certificate, paid to their sub-contractors on division 9 (that being the only division here in dispute) what was coming to them in accordance with the showing of said last monthly certificate, except in the case of one of their sub-contractors who was paid $880.00 less and another sub-contractor who was paid about $500.00 less than said certificate shows to have been coming, a portion of which was for work on division 9 and a portion for work on division 10, respecting which division 10 there is no dispute, but there is no evidence showing what exact portion of said $880.00 and $500.00 belonged to division

"The aforesaid party of the first part, [Price, McGavock & Co.,] in consideration of the prices hereinafter agreed to be

---

9, and what portion to division 10; that such payments by Jones, Forrest & Bodkin to their sub-contractors were made at various times down to January 12, 1888, but were all made before Jones, Forrest & Bodkin had any knowledge of Baker's remeasurements, hereinafter mentioned, or of any claim on the part of the defendant that Dressler's estimates were erroneous.

The court further finds that some time after the last of these monthly certificates was delivered to the plaintiffs one George T. Baker, who had had charge of division 7, made certain remeasurements and reclassifications of the work done in divisions 8 and 9; that the work on these two divisions prior to November 26th had not been done under the supervision of said Baker, but was done under the supervision of one F. F. Ames and R. Dressler respectively, and that said Baker embodied the results of his remeasurements and reclassifications in the estimate called the final estimate; which said estimate was approved by the assistant engineer-in-chief and the engineer-in-chief, and delivered to the plaintiffs in March, 1888.

The court further finds that the said reëstimate and reclassification so made largely changed the quantities and classifications of the work done on division 9 from the showing of quantities and classifications of said division made in the several monthly certificates, including the one made after the substantial completion of the work as aforesaid; that said reclassification and remeasurement of said Baker were made without the coöperation or knowledge of the plaintiffs or their sub-contractors, and that the plaintiffs had paid to Jones, Forrest & Bodkin, and Jones, Forrest & Bodkin had made payments to their sub-contractors under their said contracts, as above set forth, and according to the quantities and classifications shown by the monthly certificates before either of them had knowledge of said Baker's remeasurements and reclassifications.

The court further finds that the said last monthly certificate of the work on division 9 could, with reasonable care upon the part of the division engineer, have been made nearly accurate, and that upon the assumption of the correctness of said Baker's so-called final estimate the discrepancy between it and the said certificate could be the result only of negligence or incompetency upon the part of the division engineer in charge of said division unless the said division engineer was purposely dishonest; but the court finds that there was no proof of dishonesty in which the plaintiffs or their sub-contractors took any part or of which they had any knowledge.

The court further finds that the effect of the said monthly certificates of quantities and classifications of work done on division 9 was to cause the plaintiffs to pay to Jones, Forrest & Bodkin more on account of each of said certificates than they would have paid if said certificates had been made according to the remeasurement and reclassification of said Baker, and Jones, Forrest & Bodkin in turn to pay more to their sub-contractors than they would have paid if the said monthly certificates had been made accord-

paid to them by the party of the second part, [the railroad company,] hereby agree and bind themselves to construct and in every respect to complete the grubbing and clearing, grading and masonry, including the furnishing of materials and all other things requisite and necessary to complete the roadbed and prepare the same ready for receiving the superstructure, upon that portion of the railroad of the party of the second part known and designated as section —, number —, the first fifty (50) miles eastward from station thirty (30), east bank of Mississippi River, of the Chicago, Sante Fé and California Railway, in such a manner as will conform in every respect to the annexed specifications and to the following conditions, viz.:

"1st. That the work shall be commenced within ten (10) days after the execution of these presents, or as soon after as the railway company shall have acquired a title to the lands, and shall be completed on or before the first day of August, one thousand eight hundred and eighty-seven.

"2d. The work shall be executed under the direction and supervision of the chief engineer of said railway company and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined and whose determination shall be conclusive upon the parties, and who shall have full power to reject or condemn all work or materials which in his or their opinion do not fully conform to the spirit of

---

ing to Baker's remeasurement and reclassification; so that if the plaintiffs are to be paid for the entire work according to the revision made by Baker they will be the losers to the extent of the errors said to have been corrected on division 9.

The court further finds that according to the said estimate of Baker, upon the divisions other than division 9, there is a balance due to the plaintiffs from the defendant of $17,351.68, and that on the basis of the last monthly certificate of Dressler on division 9, viz., the certificate of November 1st, as above set forth, there is a balance due on that division of $11,586.48, in which amount is included so much of the sums of $880.00 and $500.00 as is applicable to division 9, as above referred to.

The court therefore finds in favor of the plaintiffs for the amount of $28,938.16.

this agreement; and said chief engineer shall decide every question which can or may arise between the parties relative to the execution thereof, and his decision shall be binding and final upon both parties; and whereas the classification of excavation provided for in the annexed specifications is of a character that makes it necessary that special attention should be called to it, it is expressly agreed by the parties to this contract that the determination, by the measurements and calculations of the said engineer, of the respective quantities of such excavation shall be final and conclusive."

\*          \*          \*          \*          \*

"5th. If any damage shall be done by the party of the first part (or persons in their employ) to the owners or occupants of lands or other property adjoining or in the vicinity of the work herein contracted to be done the engineer of said company shall have the right to estimate the amount of said damage and to pay the same to said owner or occupant, and the amount so paid for such damage shall be deducted from the value of work done under this contract."

\*          \*          \*          \*          \*

"The aforesaid party of the second part hereby agrees that whenever this contract shall be completely performed on the part of the said party of the first part, and the engineer has certified the same in writing, the said party of the second part shall, within ten days thereafter, pay to said party of the first part any remaining sums due for said work, according to this contract, as follows, to wit: [Here follow the prices agreed upon for different kinds of work to be done.]"

\*          \*          \*          \*          \*

"It is further agreed between the parties that monthly payments shall be made by the party of the second part, on the certificate of the engineer, for work done, deducting ten per cent from the value of work done, as agreed compensation for damages, to be forever retained by the party of the second part in case the whole amount of work herein named shall not be done in accordance with this agreement.

"For the purpose of avoiding all causes of difference or dispute between the parties to this contract relative to its true

intent or meaning, and for the purpose of adjusting in an amicable manner any difference that may or can arise relative thereto, it is hereby mutually understood and agreed by the parties as follows, to wit:

"1. No extra charges will be claimed or allowed on account of changes, either in the line or grade of the road, the prices herein mentioned being considered as full compensation for the various kinds of work herein agreed to be performed.

"2. Whenever work is required to be done which is not now contemplated or covered by the prices herein mentioned the engineer shall fix such prices for the work as he shall consider just and equitable, and the said parties shall abide by such prices, provided the party of the first part enter upon and commence such work with full knowledge of the prices so fixed by the engineer; but if the party of the first part decline executing said work at the price fixed by the engineer, then the party of the second part may enter into contract with any person or persons for its execution, the same as if this contract had never existed; and if extra work, or work not provided for in this contract, is performed by the contractors, without protest or notice in writing to the engineer and to the party of the second part before prices shall have been fixed to such work, then the engineer shall estimate the same at such prices as he shall deem just and reasonable, and his decision shall be final, and the party of the first part shall accept of said prices in full satisfaction of all demands against the party of the second part for said extra work; but nothing shall be deemed extra work that can be measured or estimated under the provisions of this contract."

\* \* \* \* \*

"5. It is expressly agreed by the party of the first part that the party of the second part may at any time pay so much of the money due the party of the first part on the running or final estimates above mentioned to the laborers employed by the party of the first part as may be due said laborers and charge the same to the party of the first part.

"6. In case any or all work embraced in this contract shall be permanently suspended by and on account of the party of

the second part, which it is hereby agreed the party of the second part may do, for other causes than heretofore provided in this contract, then in that case all further operations under this contract shall be suspended within three days after receiving written notice from the party of the second part requiring the further progress of the work to be suspended, and the party of the first part shall have their choice either to consider such suspension temporary and resume work on the same within ten days after receiving notice to resume work, or may consider the same at an end, and shall receive full pay for all work by them performed under this contract, and at the prices herein stipulated, upon the estimate of the engineer, which shall be final and conclusive between the parties to this contract; which estimates shall not include any anticipated profits that might have accrued from the completion of the said work, it being understood that no claim for damages shall be made by the party of the first part on account of any profits that might accrue from the completion of the same."

*Mr. Norman Williams* and *Mr. Charles S. Holt* for plaintiff in error.

The final estimate of the chief engineer, if properly made, is the measure of the plaintiff's rights, and is conclusive. *Herrick* v. *Belknap*, 27 Vermont, 673; *Martinsburg & Potomac Railroad* v. *March*, 114 U. S. 549; *Snell* v. *Brown*, 71 Illinois, 133; *Monongahela Navigation Co.* v. *Fenlon*, 4 W. & S. 205; *Sweet* v. *Morrison*, 116 N. Y. 19.

The court having refused to consider the final estimate, not because it was incorrect, but on the ground that the company had no right to make any final estimate at all, the judgment should be reversed.

*Mr. P. S. Grosscup* for defendants in error.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The written contract between the parties in this case does not materially differ from the one before this court in *Martinsburg & Potomac Railroad Co.* v. *March*, 114 U. S. 549, 553.

In that case the contractor did not allege in his declaration that the engineer ever certified in writing the complete performance of the contract, together with an estimate of the work done and the amount of compensation due him according to the prices established by the parties; which certificate and estimate was made by the agreement a condition of the liability of the company to pay the contractor the balance, if any, due him. Nor did the declaration allege any facts which, in the absence of such a certificate by the engineer whose determination was made final and conclusive, entitled the contractor to sue the company on the contract. It was held, in accordance with the principles announced in *Kihlberg* v. *United States*, 97 U. S. 398, and *Sweeney* v. *United States*, 109 U. S. 618, that the declaration was fatally defective in that it contained " no averment that the engineer had been guilty of fraud, or had made such gross mistake in his estimates as necessarily implied bad faith, or had failed to exercise an honest judgment in discharging the duty imposed upon him." Some observations in that case are pertinent in the present one. It was said: " We are to presume from the terms of the contract that both parties considered the possibility of disputes arising between them in reference to the execution of the contract. And it is to be presumed that in their minds was the possibility that the engineer might err in his determination of such matters. Consequently, to the end that the interests of neither party should be put in peril by disputes as to any of the matters covered by their agreement, or in reference to the quantity of the work to be done under it, or the compensation which the plaintiff might be entitled to demand, it was expressly stipulated that the engineer's determination should be final and conclusive. Neither party reserved the right to revise that determination for mere errors or mistakes upon his part. They chose to risk his estimates, and to rely upon their right, which the law presumes they did not intend to waive, to demand that the engineer should, at all times, and in respect to every matter submitted to his determination, exercise an honest judgment, and commit no such mistakes as, under all the circumstances, would imply bad faith."

VOL. CXXXVIII—13

The only difference between that case and the present one is that the alleged mistakes of the engineer in the former were favorable to the railroad company, while in this case they are favorable to the contractors. But that difference cannot affect the interpretation of the contract. In the present case the agreement was that the work should be executed under the direction and supervision of the chief engineer of the railroad company and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work should be determined, and "whose determination shall be conclusive upon the parties." Any decision of the chief engineer relating to the execution of the contract was to be "binding and final upon both parties." His measurements and calculations as to excavations were made "final and conclusive."

What are the substantial facts found by the court below? The work was in four divisions, each division being in charge of an assistant or division engineer, who acted under the general direction of the chief engineer. The agreement provided for monthly payments to the contractor, on the certificate of the engineer, "for work done;" ten per cent from the value thereof to be retained by the company until the whole work was completed in accordance with the contract. The work was under the immediate supervision of the division engineer. On the first day of each month he made up and forwarded to the assistant chief engineer an estimate of work done on each section of his division, according to quantities and classifications. Upon such estimates the assistant chief engineer ascertained the amount due the contractor to the beginning of the month. These monthly estimates were approved by both the assistant chief engineer and chief engineer. This course was pursued until the work was substantially completed, and was accepted and taken possession of by the company. Subsequently, without the knowledge or coöperation of the contractors, Baker, a subordinate engineer of the railroad company, who had not supervised the work of the plaintiffs, reëstimated and reclassified it, and upon such reëstimate and reclassification, which were approved by the chief engineer,

the company claimed that the monthly estimates upon which the plaintiffs had been paid from time to time were much too large.

We are of opinion that the ultimate facts, as found by the court, do not authorize the railroad company to go behind the estimates from time to time by its division engineer, which were approved and certified by the assistant chief engineer and chief engineer. Within a reasonable interpretation of the contract, the last monthly estimate of work done on division nine, (that being the only division here in dispute,) followed by the acceptance by the company of the whole work, was a certificate of complete performance entitling the plaintiff to be paid in full according to the terms of the contract. While there was evidence tending to show that the estimates by the division engineer, upon which the last monthly certificate was based, were not made up from actual measurements on the ground, but from reports by subcontractors, there was, also, evidence tending to show that the remeasurements and reclassifications which the company caused to be made after the completion and acceptance of the work, and which it calls the "final estimate," were inaccurate. But there is no fact distinctly found indicating fraud upon the part of the company's engineers, or such gross mistakes by them as imply bad faith. It is found only that the monthly estimates might, with reasonable care, have been made nearly accurate, and that, *if* the remeasurements and reclassifications were correct, the discrepancy between them and the monthly estimates, upon which the plaintiffs were paid from time to time, could be explained only upon the ground of negligence, incompetency or dishonesty upon the part of the division engineer. But the court did not find that the monthly estimates were inaccurate, or that the chief or division engineer was dishonest, or that the subsequent remeasurement and reclassification were correct. The mere incompetency or mere negligence of the division or chief engineer does not meet the requirements of the case, unless their mistakes were so gross as to imply bad faith.

We are of opinion that the judgment is supported by the finding of facts, and it is *Affirmed.*