### CITY OF MOBILE v. SHEA.

#### (Circuit Court of Appeals, Fifth Circuit. January 5, 1904.)

#### No. 1,277.

1. CONTRACT WITH CITY FOR CONSTRUCTING SEWER—VARIATIONS FROM SPECIFICATIONS—MAKING DECISION OF ENGINEER CONCLUSIVE.

    A written contract was entered into between a city and a contractor for the construction of a system of sewerage for the city in accordance with plans and specifications annexed, and at prices for work and materials shown in a schedule also attached, although the right was reserved to change the amounts from those shown in the plans and specifications. It was further expressly provided that all estimates of work done and materials furnished should be made by the city engineer, and all differences and disputes in relation thereto, or any other matter or thing arising in reference to the construction of the said sewerage system, should be referred to him, and his decision thereon should be conclusive, final, and binding on both parties. *Held*, that the work done and the materials furnished by the contractor in constructing the sewerage system, although the plans and specifications were in some instances departed from, were done and furnished under the contract, and at the prices therein fixed, and that, as to the amount of the same, and upon any other matter of dispute, the estimate or decision of the engineer was conclusive.

In Error to the Circuit Court of the United States for the Southern District of Alabama.

On October 21, 1898, the parties to this action entered into a written contract, the provisions of which, so far as they are material for consideration herein, are substantially as follows:

"(1) That for and in consideration of the sum of one hundred and eighty-six thousand two hundred and seventy-two dollars and fifty cents ($186,-272.50), said party of the second part agrees, obligates and binds himself to equip and construct a complete and perfect system of sewerage for the city of Mobile, according to the specifications attached to, and forming a part of, this agreement. It being expressly understood and agreed that this agreement shall be construed and interpreted in connection with said specifications, the same being the basis upon which this agreement is founded.

"(2) It is further expressly understood and agreed by and between the parties to this agreement that, as set forth in the specifications hereto attached, all differences and disputes in reference to the work, materials, labor and transportation used, estimates for work done, or any other thing or matter whatsoever that may arise in reference to the construction of said sewerage system, shall be referred to the engineer of the party of the first part, and that the decision of said engineer of the party of the first part shall be conclusive, final and binding upon the parties to this agreement."

"(4) It is further expressly understood and agreed that all work, labor, materials and transportation, done or furnished in constructing said sewerage system, shall be at the prices stipulated in Schedule A attached to the specifications annexed to this agreement, and which Schedule A is hereby made a part of this agreement and is to be signed together with said specifications by the mayor of said city of Mobile and by said party of the second part. The engineer mentioned and so termed in this agreement is T. W. Nichol of Mobile, Alabama, or his successor.

"(5) It is further expressly understood and agreed that the said party of the second part is to furnish all material of every kind, character and description, labor and transportation necessary to be used in the construction of said sewerage system at the prices named in said Schedule A, which has, by the fourth paragraph or section of this agreement, been made a part of this agreement.

"(6) It is further expressly understood and agreed that on the 10th of each month first succeeding the commencement of the work and thereafter, the engineer shall render to the contractor an estimate of the work done, in accordance with the specifications, less a deduction of ten (10) per cent.; and after the contractor shall have produced evidence that he has paid for all the material, labor and transportation entering into the work, or made satisfactory provision therefor, he shall be paid the sum of such estimate. Should the contractor fail to produce such evidence to the engineer, then such, any, or all amounts due by him for material, transportation and labor will be deducted out of such estimates, and when the entire work under this contract and the specifications made a part thereof, shall have been completed to the entire satisfaction of the engineer, and said engineer shall have so certified in writing, then, sixty days thereafter, all or any balance due the said party of the second part, in this paragraph called the contractor, shall be paid, less any amounts incurred for failure to adequately prosecute the work, and provided the party of the second part shall produce evidence satisfactory to the engineer that all claims for material, labor and transportation have been paid. The amount of one hundred and eighty-six thousand two hundred and seventy-two dollars and fifty cents ($186,272.50) is intended to cover the entire cost of all the materials, labor and transportation in the complete and entire construction of the sewerage system for Mobile, Alabama, as shown in the plans and specifications made a part hereof, and such changes as may be made hereafter by the engineer and accepted in writing by the said party of the second part. This amount, however, it is expressly understood and agreed, may be increased or diminished and will be finally determined by the detailed figures and prices shown in Schedule A, forming a part of this agreement. It being the sense of this agreement that for increased work, the word 'work' including materials, labor and transportation, the party of the second part shall be paid at the prices named in Schedule A, and for any deduction in work, as above defined, the deductions shall be made at the prices named in Schedule A."

"(11) It is further expressly understood and agreed that this agreement is not to be binding upon the parties hereto, unless the next General Assembly

of the state of Alabama shall expressly authorize the authorities of the city of Mobile to issue bonds of the city of Mobile in an amount of seven hundred and fifty thousand dollars ($750,000.00) to pay for the system of waterworks and also for the system of sewerage herein provided for, and said bonds shall have been sold by the city of Mobile."

"(14) It is further expressly understood and agreed wherever there is a conflict between the specifications and this typewritten agreement, the terms and conditions of the typewritten agreement shall govern."

Among the provisions of the "specifications for the construction of a system of sewerage for the city of Mobile," the following appear:

"It is the intent of these specifications that the engineer's decision in all matters relating to the work, the rendering of partial or final estimates, shall be final and binding. The engineer's estimate of quantities contained herein is understood to be approximate, which may be increased or diminished. Excavations below grade, wherever required by the engineer, shall be done by the contractor at the price per lineal foot stipulated for a sewer of that size and depth, said depth to be determined by the engineer. The contractor will be required to sign these specifications with contract, notwithstanding the contract identifies this instrument, the intent being that the contractor has fully understood the definitions contained therein."

The complaint was filed March 28, 1901. It embraces seven counts. The first four counts of the complaint seek to recover, first, upon an account; second, upon an account stated; third, for merchandise, goods, and chattels sold by the plaintiff to the defendant; fourth, for work and labor done for the defendant by the plaintiff at his request—each for the amount of $44,464.28.

The fifth, sixth, and seventh counts of the complaint are substantially as follows:

"(5) The plaintiff claims of the defendant the further sum of twenty-seven thousand one hundred and fifty-eight and $70/100$ dollars, for that, heretofore, to wit, on the twenty-first day of October, 1898, the plaintiff and the defendant entered into a written contract, whereby the plaintiff agreed to construct for the defendant a certain system of sewers in the city of Mobile in accordance with certain plans and drawings which were then at the office of the engineer in charge of said work at Mobile, Alabama, and by which said contract the city of Mobile undertook and agreed to pay the plaintiff for his work at a stipulated scale of prices set forth in a schedule attached to said contract; and the plaintiff avers that, notwithstanding the agreement between the plaintiff and the defendant to the effect that said sewers should be constructed in accordance with the plans and drawings aforesaid, the said city of Mobile, subsequent to the execution of said contract, requested the plaintiff to lay the said sewer pipes at various and sundry places upon grades at variance with the said plans and drawings, and the plaintiff complied with this request, and the said city of Mobile agreed and promised to pay for such extra work and material at the reasonable value thereof; and the plaintiff avers that the reasonable value of the extra work and material required by said changes and furnished by the plaintiff is twenty-seven thousand one hundred and fifty-eight and $70/100$ dollars, for which he sues.

"(6) The plaintiff claims of the defendant the further sum of two thousand nine hundred seventy-three and $39/100$ dollars, for that, heretofore, to wit, on the 21st day of October, 1898, plaintiff and the defendant entered into a written contract whereby the plaintiff agreed to construct for the defendant a certain system of sewers in the city of Mobile in accordance with certain plans and drawings which were then and there at the office of the engineer in charge of said work at Mobile, Alabama, including the erection of certain manholes of the depth and size required by said specifications, and by which said contract the city of Mobile undertook and agreed to pay the plaintiff for this work at a stipulated scale of prices set forth in the schedule attached to said contract; and the plaintiff avers that, notwithstanding the agreement between the plaintiff and the defendant to the effect that the said sewers should be constructed in accordance with the plans and drawings aforesaid, the said city of Mobile, subsequent to the execution of said contract, requested this plaintiff to lay the said sewer pipes at various and sundry places upon grades at variance with the said plans and drawings, which change necessitated extra and

additional work in making said manholes larger and deeper, and the plaintiff complied with this request, and the city of Mobile agreed and promised to pay for the said extra work and material at the reasonable value thereof; and the plaintiff avers that the reasonable value of said extra work and material upon said manholes required by said change and furnished by the plaintiff is two thousand nine hundred seventy-three and $39/100$ dollars, for which he sues.

"(7) The plaintiff claims of the defendant the further sum of thirteen thousand nine hundred ninety dollars for the breach of an agreement entered into by it on, to wit, the 21st day of October, 1898, in substance as follows: that is to say, by which the plaintiff agreed to construct for the defendant a certain system of sewers in the city of Mobile according to certain plans and specifications made a part thereof, and such changes as might be made therein by the engineer in charge of said work, and accepted in writing by the plaintiff, and whereby the defendant agreed to pay the plaintiff for the equipment and construction of said system of sewerage at certain designated rates, which were fixed by a schedule of prices attached to said contract; and the plaintiff says that, although he was at all times ready and willing to have fully complied with the said contract upon his part, the defendant failed to comply with the following provisions thereof; that is to say, that the defendant, without the written consent of the plaintiff, abandoned the construction of twenty-seven and $98/100$ miles of the said system, and declined to permit the plaintiff to construct the same, or to pay the plaintiff therefor, by reason of which the plaintiff was injured, in this: that the contract price for the construction of the said twenty-seven and $98/100$ miles exceeded the price at which the plaintiff could have performed said work and furnished said material by the sum of thirteen thousand nine hundred and ninety dollars, for which the plaintiff now sues."

The defendant, for answer to the complaint, said it is not guilty of the matters alleged therein, and, for second and third plea to the second, third, fourth, fifth, and sixth counts of the complaint, said that the sum of money claimed of the defendant for work and labor done, and for transportation and materials furnished, cannot be recovered of the defendant, because the same was done and performed and furnished under a written contract, referring to the provisions thereof, which stipulated that the decision of the engineer should be conclusive, final, and binding upon the parties to the agreement, and that the engineer, in his partial and final estimates of the work and labor done, and transportation and materials furnished, did pass upon and decide what was due the plaintiff for all of the same, and for all extra compensations due for larger and deeper manholes forming a part of said sewer system, and for all materials and transportation furnished, and the construction thereof, and that the defendant did pay to the plaintiff the full amount of all partial and final estimates due him, as certified by the engineer.

And, fourth, for further plea to the seventh count of the complaint, the defendant said that the sum of money claimed thereunder could not be recovered under the terms of the written contract, as shown in sections 2 and 6 thereof, and under the provisions of the specifications to the effect that it is the intention thereof that the engineer's decision in all matters relating to the work and the rendering of partial and final estimates shall be final and binding, and that the engineer's estimates of quantities contained therein is understood to be approximate, which may be increased or diminished; and the defendant avers that, under the provisions of the written contract, the defendant had a right to deduct the number of miles stated in the seventh count from defendant's proposed sewerage system, and to abandon the construction of same, and not be liable to the plaintiff in this action for not allowing him to build the 27.98 miles of said sewerage system.

To these pleas the plaintiff demurred respectively, separately, and severally, presenting numerous grounds in support of his demurrer. These demurrers were all overruled. Thereupon the plaintiff replied to the pleas of the defendant. First, for answer to each of the pleas, the plaintiff takes issue thereon; second, he sets up, by reference to a marked exhibit, the written contract to which the pleas refer, and, continuing his replication, proceeded as follows:

"And the plaintiff further avers that the plans and drawings referred to in said contract, and made a part thereof, were, as stated in said specifications, at the office of the said engineer, Mobile, Alabama, and showed upon their face over what territory and upon what grades the said sewerage system was to be constructed under said contract. And the plaintiff further avers that, after the execution of said contract, the defendant, without the written consent of the plaintiff, materially changed the grade of the said sewerage system in various and sundry places, so as to necessitate larger excavations of earth in addition to that called for by said written contract, and of a character which was rendered materially more expensive than the work provided for by said contract in the same locality, by reason of a difference existing between the character of the soil at the depths provided by said plans as agreed upon between the said parties, and the character of the soil the removal of which was required by said changes, and the defendant thereby likewise necessitated the use of a large amount of bracing, and the use of a large amount of material which were not required by the work as provided for by said contract, and requested the plaintiff to do the extra work required by said modifications, and agreed to pay the plaintiff therefor at the reasonable value thereof; and plaintiff avers that it is for the recovery of the difference between the reasonable value of the said work, and the amount which the plaintiff has paid on account thereof, that this suit is brought.

"And for further answer to the second plea and also to the third plea by the defendant pleaded, separately and severally to each of said pleas, as pleaded to the sixth count of the complaint, the plaintiff says that the contract referred to in said plea, together with the specifications and the schedule of quantities and prices referred to in said contract, and which are thereto attached, were in words and figures as the same appear from a copy thereof which is hereto attached, marked 'Exhibit A,' made a part hereof, and now specially referred to and incorporated herein.

"And the plaintiff further avers that the plans and drawings referred to in said contract, and made a part thereof, were, as stated in said specifications, at the office of the said engineer, Mobile, Alabama, and showed upon their face over what territory and upon what grades the said sewerage system was to be constructed under said contract.

"And the plaintiff avers that, after execution of said contract, the defendant, without the written consent of the plaintiff, materially changed the grade of said sewerage system in various and sundry places, at which the manholes therein referred to were to be erected, so as to necessitate the building of said manholes much deeper and larger than was required by said plans as provided in said contract, and so as to render the construction and material thereof materially more expensive than were the same provided for in said contract, by reason of the increased size and depth thereof, and by reason of a difference between the character of the soil, the removal of which was required by said changes, and the defendant requested the plaintiff to do the extra work required by said modifications, and agreed to pay the plaintiff therefor at the reasonable value thereof; and the plaintiff avers that it is for the recovery of the difference between the reasonable value of said extra work and material, and the amount which the plaintiff has paid on account thereof, that this suit is brought.

"And for further replication to the fourth plea by the defendant, pleaded to the seventh count of the complaint, the plaintiff says that the contract referred to in said plea, together with the specifications and the schedule of quantities and prices thereto attached, were in words and figures as the same appear from a copy thereof which is hereto attached, marked 'Exhibit A,' made a part hereof, and now referred to; and the plaintiff avers that the plans and drawings referred to in said contract were on file in the office of the said engineer, Mobile, Alabama, and showed upon its face definitely the territory over which said sewerage system was to be constructed, and the grades thereof; and the plaintiff avers that the defendant, after the execution of said contract, and without the consent of the plaintiff, breached the said contract, in this: that the defendant, without the written consent of the plaintiff, abandoned the construction of twenty-seven and $98/100$ miles of the said system, as shown by the said plans and drawings, and declined to permit the plaintiff to construct

the same or to pay the plaintiff therefor, by reason of which the plaintiff was injured as alleged in said seventh count of the complaint."

To the second, third, and fourth of these replications the defendant opposed numerous demurrers, among other grounds submitting that the replications failed to show that any work was done by the plaintiff not provided for in Schedule A, or below the depths provided for in Schedule A, or to show what changes the defendant made in the grade at which work was done, or that the estimates of the work done by the plaintiff under the changed grade were passed upon and allowed by the engineer as provided for in the contract, or that the plaintiff objected to the changes in the grade, and, as additional grounds of demurrer to the fourth replication, that the replication shows that the defendant had a right to diminish the work, and shows that the plaintiff was to be paid for such work as he did, and fails to show that he did any work. The demurrers to the second and third replications were overruled. The demurrer to the fourth replication was sustained. Thereupon the plaintiff, with leave, amended the fourth replication by inserting between the words "and the grades thereof" and the words "and the plaintiff avers that the defendant," the following, namely: "And that the sewerage system so to be constructed by the plaintiff under the terms of the contract consisted of more than twenty-seven miles of sewer, to wit, of eighty-six and $^{50}/_{100}$ miles of sewer, to be paid for under said contract per lineal foot stipulated therein."

To the fourth replication, as amended, the defendant submitted substantially the same demurrers that had been submitted originally, and, these being overruled, the defendant rejoined, joining issue upon the second, third, and fourth replications, and said:

"(2) And for further rejoinder to said second replication of the plaintiff, the defendant avers that, for all work done by the plaintiff in building said sewerage system for defendant, he received a written estimate made by the engineer provided for in said written contract, showing the amount of work done and the price, as provided for in said Schedule A, made a part of the said replication, and which said estimates the plaintiff presented to the defendant, and the defendant paid the plaintiff the amounts showed by such estimates, and which sums were accepted by the plaintiff, and receipted for by him.

"(3) And for further rejoinder to said second replication of the plaintiff, the defendant avers that, upon the completion of all work done by the plaintiff in building said sewerage system, the plaintiff received from the engineer a final estimate in writing showing the total work done by the plaintiff in building said sewerage system, and the prices therefor, as shown by Schedule A, made a part of said replication, and presented the same to the defendant, and was paid by the defendant the amount of said final estimate, which sum plaintiff received and receipted for.

"The defendant pleads to the third replication of the plaintiff the second and third rejoinder pleaded by it to said second replication.

"And now comes defendant, and for rejoinder to the fourth replication of the plaintiff, as amended, and avers that, from time to time during the progress of the building of said sewers by the plaintiff for the defendant, certain of the work contemplated by the plans was eliminated by the defendant, and the plaintiff was notified of such eliminations, and such eliminations were the same that plaintiff claims as a breach of said contract, and that the plaintiff made no objections thereto, and said sewerage system was completed by the plaintiff without objection, with such streets or portions of streets left out, and plaintiff never claimed at any time before the completion of said sewerage system that his consent in writing was necessary to such eliminations.

"And for further rejoinder to the fourth replication of the plaintiff, as amended, the defendant avers that the plaintiff, after said written contract was made, verbally assented to the eliminations by the defendant of, to wit, twenty-seven and ninety-eight one-hundredths miles of sewers, and such eliminations were the same that plaintiff claims constituted a breach of said contract."

Entry of the final judgment in the case is in these words:

"The evidence and argument being concluded, the jury is now charged by the court, and the case submitted to them.

"And now comes the jury, and upon their oaths do state 'that the jury finds

for the plaintiff, and assesses the damage at seventeen thousand fifty-eight and $^{58}/_{100}$ ($17,058.58). December 10th, 1902. S. Z. Bellah, Foreman.'

"It is therefore ordered and adjudged by the court that the said Thomas J. Shea do have and recover from the said city of Mobile the said sum of seventeen thousand fifty-eight and $^{58}/_{100}$ dollars ($17,058.58), together with the costs of this suit, of which execution may be issued."

R. T. Ervin and B. B. Boone, for plaintiff in error.

Gregory L. & H. T. Smith, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The questions presented on this writ of error depend upon the proper construction of the written contract entered into by the parties, the material parts of which are shown in the foregoing statement of the case. We have to gather from the rulings on the pleadings the construction placed upon this contract by the learned judge who tried the case in the Circuit Court. The record brought up does not show, as it was not necessary that it should show, any of the incidents of the trial or the action of the trial judge between the final rulings on the demurrers and the entry of the final judgment. The first two lines of the judgment inform us that, "the evidence and argument being concluded, the jury is now charged by the court, and the case submitted to them." In order to clearly see and fully present the views of the judge, we have thought it necessary, or at least proper, to state with unusual fullness the provisions of the written contract and the pleadings of the respective parties. It appears with sufficient clearness on the face of the contract, itself that it was made by the parties with full knowledge that the city of Mobile had been engaged, and was then engaged, in an effort to procure authority to issue bonds for a fixed amount to pay for a system of waterworks, and also for a system of sewers, and, in support of her application to the Legislature for that authority, had caused a survey to be made, and plans and specifications for the construction of a system of sewerage for the city to be prepared, and had received sealed proposals for the construction thereof, from the defendant in error, at least, if not from others, in advance of the Legislature's action, and as inducement to the granting of the authority sought. This is shown by the eleventh section of the contract, read in connection with the terms of the three writings which evidence the agreement of the parties. The prices of all work, labor, materials, and transportation to be done and furnished in constructing the sewerage system, stipulated in Schedule A attached to the specifications, were the prices and figures on the approximate quantities as proposed by the defendant in error in his bid for the construction of the sewers and appurtenances thereto. It bears date October 11, 1898. The specifications required that the bids for the construction of the system of sewers should be made on the form of proposal furnished by the engineer, and attached to the specifications. Bidders were advised that, before tendering proposals, they should visit the locality and acquaint themselves with the physical conditions, and that their tender of proposals should be understood as having been made with full and complete knowledge thereof, and that the engineer's

estimate of quantities contained in the specifications should be understood to be approximate and might be increased or diminished. The written specifications which the contractor was required to sign, to evidence his full understanding of the definitions contained therein; the contractor's bid, showing the prices and figures on the approximate quantities, for the sum of which he proposed to undertake and complete all of the work, set out in tabulated form, and authenticated by the due execution thereof by each of the parties, bearing date, as we have already said, October 11, 1898; and the final writing, as shown in the statement of the case, dated October 21, 1898—each duly executed by the respective parties—constitute the written contract, and fill more than 20 closely printed octavo pages. These writings all have relation to a complex system of public improvement of large extent, and it is difficult to believe that it was at any time in the contemplation of either of the parties that this projected improvement should be made without any written evidence of a contract to guide them in the construction of the work, and in making their partial and final settlement. The theory of the plaintiff's pleadings appears to be that, notwithstanding all these elaborate preparations, and the solemn execution of these writings by the parties, when the work was about to commence, and the office of the writings to begin to have effect, they were wholly set aside, and the work, so far as any work was done, was prosecuted, and settlements therefor made, under a verbal contract, which did not stipulate for definite prices, but left the parties at large to settle on the basis of the reasonable value of the work, materials, labor, and transportation used, and that the writings retain efficiency only as to that part of the work which was never done. The pleadings of the plaintiff do not state what amount of money he received from the city on this work of constructing the sewer system, nor does the record anywhere show the amounts paid him during the progress of the work, or at the conclusion thereof; and, in the absence of bills of exception, we have no record evidence of the testimony offered and admitted on the trial.

In the brief submitted by counsel for the defendant in error, it is stated that the court overlooked the issue made in the replication to the second and third pleas to the first five counts of the complaint, so far as they related to the work and labor done and material furnished in making extra excavations as incident to the increased depths of the sewer system, and charged the jury that the plaintiff could not recover for such work and labor done and material furnished, and the amount of the verdict shows that the jury responded to these instructions, and found for the plaintiff only under the sixth and seventh counts of the complaint. The sixth count of the complaint only claims $2,973.39 for extra work and material on the manholes required by the alleged changes of plan and specifications, and furnished by the defendant in error. The seventh count in the complaint claims only the sum of $13,990, alleged loss of profit on work alleged to have been contracted to be done, which the city afterwards refused to have done. The verdict of the jury, with which the defendant in error appears to be satisfied, must embrace only these claims, and the interest that had accrued thereon prior to the date of the verdict. It would appear from these

undisputed features of the case that the changes in the proposed plan and specifications had not been radical.

We have fully examined and considered the cases cited on the brief submitted for the defendant in error, and relied upon in support of his contentions. Our attention has been most carefully given to the cases of Wood v. Ft. Wayne, 119 U. S. 312, 7 Sup. Ct. 219, 30 L. Ed. 416; Henderson Bridge Company v. McGrath, 134 U. S. 260, 10 Sup. Ct. 730, 33 L. Ed. 934; Wyandotte & D. R. Ry. v. King Bridge Company, 100 Fed. 197, 40 C. C. A. 325; County of Cook v. Henry Harms, 108 Ill. 151; and Salt Lake City v. Smith, 104 Fed. 451, 43 C. C. A. 637. We do not deem it necessary to review these cases, and specifically point out wherein the contracts and work and pleadings of the contractor in each of them materially differ from the contract and work and pleadings of the parties involved in the case before us. We do not think that the contractor has brought his claims within the authority of the cases he has cited. On the contrary, it seems to us that the case made by him does not vary materially from those before the Supreme Court in Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; and Chicago & Santa Fé Railroad v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917. The observations made by Judge Harlan in the first of these cases, and repeated in the one last cited, are pertinent in the present case. Speaking for the court in those cases, he said:

"We are to presume from the terms of the contract that both parties considered the possibility of disputes arising between them in reference to the execution of the contract. And it is to be presumed that in their minds was the possibility that the engineer might err in his determination of such matters. Consequently, to the end that the interests of neither party should be put in peril by disputes as to any of the matters covered by their agreement, or in reference to the quantity of the work to be done under it, or the compensation which the plaintiff might be entitled to demand, it was expressly stipulated that the engineer's determination should be final and conclusive. Neither party reserved the right to revise that determination for mere errors or mistakes on his part. They chose to risk his estimates, and to rely upon their right, which the law presumes they did not intend to waive, to demand that the engineer should, at all times, and in respect to every matter submitted to his determination, exercise an honest judgment, and commit no such mistakes as, under all the circumstances, would imply bad faith."

If it is possible for parties negotiating with reference to the construction of such a system of public improvement as that involved in this case to bind themselves by express stipulations that the engineer's determination should be final and conclusive, on possible disputes arising between them with reference to the execution of the contract, the parties to this action have so bound themselves.

We conclude that the demurrers of the defendant to the second and third replications, and to the fourth replication as amended, should have been sustained.

It is therefore ordered that the judgment of the circuit court is reversed, and this cause is remanded to that court, with directions to award the defendant a new trial.