### CORPORATION OF CHARLES TOWN v. LIGON et al.

### No. 3440.

Circuit Court of Appeals, Fourth Circuit.

Oct. 20, 1933.

James M. Mason, Jr., of Charles Town, W. Va., and Harry H. Byrer, of Martinsburg, W. Va., for appellant.

Clarence E. Martin, of Martinsburg, W. Va. (Martin & Seibert, of Martinsburg, W. Va., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

PARKER, Circuit Judge.

In 1926 the town of Charles Town, W. Va., hereafter referred to as defendant, entered into a contract with Ligon & Ligon, hereafter referred to as plaintiffs, for the construction of sewer lines and an outfall sewer and disposal plant. The contract embraced two projects, one covering the outfall sewer and disposal plant, referred to by the parties as project A, and the other covering the sewer lines, referred to as project B. Various changes were made by the town engineer in the work as covered by the two projects; but both were

eventually completed, claims of the contractors for changes in and additions to the work were submitted to and passed upon by the engineer, and the balance due under his estimate was tendered by the town and accepted by the plaintiffs. It is admitted that in this estimate there was an error of $113.08, but defendant consented that judgment be entered against it for this amount and same is not involved in the appeal.

After accepting the amounts tendered by the town as the balance due under the estimate and award of the engineer, the plaintiffs instituted this action to recover on a quantum meruit additional compensation for the work done, claiming that the changes in the work were so radical as to take it out of the contract and that for like reason they were not bound by the award of the engineer. The court below submitted the case to a jury; and as to most of the claims for additional compensation, the verdict was for the defendant. On three items, however, the jury found for plaintiffs, awarding $1,427.85 as additional compensation for constructing the outfall sewer, $1,200 as a return of liquidated damages for delay in project A, and $2,060 as a return of liquidated damages deducted for delay in project B. There was judgment on this verdict in favor of plaintiffs, and defendant has appealed, assigning as error the refusal of the court to direct a verdict in its favor on these items, as well as alleged error in various parts of the charge and in refusal to give requested instructions. As we are of opinion that defendant was entitled to a directed verdict, as to all the matters in dispute except the $1,200 item, we need consider only this feature of the case.

The conclusion that defendant was entitled to a directed verdict as to all matters in dispute except the $1,200 item is based on the fact that the engineer in charge of the work passed upon all disputed matters, and under the terms of the contract his award was made binding upon the parties. The position of plaintiffs is (1) that, because of departure from its terms, the contract is not binding upon them and the award of the engineer has no binding effect; and (2) that, so far as the matter of liquidated damages is concerned, this was not covered by the submission clause of the contract. We think, however, that there was no such departure from the contract as relieved the parties from its terms; that under the contract they were bound by the decisions of the engineer as to liquidated damages as well as to other matters; and that all matters covered by the verdict of the jury ex-

cept the $1,200 item were concluded by his award.

The written contract, applicable to both projects, provided, among other things, that the engineer might make alterations in the line, grade, plan, form, dimensions, or materials of the work; that the contractors should bear all losses resulting on account of amount or character of the work, or because the nature of the land in or on which the work was to be done should be different from what was estimated or expected; that the contractors should do extra work when requested by the engineer, receiving cost plus 15 per cent. for such extra work; and that the decision of the engineer should be final upon all questions as to the amount and value of the extra work. It provided also that, for failure of the contractors to complete the work by the time stipulated, the town should deduct $10 per day as liquidated damages; that the engineer should make monthly estimates which should be paid by the town to the contractors, after deducting certain percentages authorized to be retained; that after the completion of the contract the engineer should make a final estimate of the amount due and the town should pay the entire sum so found less amounts previously paid and an authorized retainage; and that the acceptance by the contractors of the last payment thus made should operate to release the town from all claims of and liability to the contractors. The engineer was made arbitrator of all questions which might arise under the contract; and it was provided that his estimate and decision upon any question which might arise "touching the contract" should be a condition precedent to the right of the contractors to receive any money under same. The exact language of this provision is as follows:

"Art. 2. To prevent dispute and litigation, the engineer shall in all cases determine the amount, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract, shall determine all questions in relation to said work and the construction thereof, and shall in all cases decide every question which may arise relative to the fulfillment of this contract on the part of the contractor. His estimate and decision shall be final and conclusive upon both parties to this contract, and in case any question shall arise between the parties hereto, touching this contract such estimate and decision shall be a condition precedent to the right of the contractor, to receive any money under the contract."

Shortly after the contract was awarded,

but before work under it had commenced, the engineer changed the course of the 2,800-foot outfall sewer line of project A for a distance of about 1,800 feet, so that instead of running over a meadow on a concrete cradle it ran around a hillside under the ground. This eliminated some of the concrete work upon which bids had been submitted, but changed the character of excavation only to the extent that, whereas the original bid contemplated approximately 1,900 feet of the 15-inch pipe placed at a depth of 0 to 3 feet, 1,100 feet at a depth of 3 to 5 feet, and 200 feet at a depth of 5 to 7 feet, the line as constructed involved the placing of only 1,477 feet at a depth of 3 feet or less, 936 feet at a depth of 3 to 5 feet, and 380 feet at a depth of 5 to 7 feet. On project B it was found necessary to place the sanitary sewer line at a depth greater than originally contemplated and to make certain other minor changes, and these were ordered by the engineer. Plaintiffs proceeded under the contract, and at the conclusion of the work filed claims with the engineer for additional work done and additional expense incurred because of the changes. The engineer rejected some of the items of the claim and allowed others. On project A, plaintiffs asked $1,425 additional compensation for excavation for the disposal plant and were awarded $1,389. For change in the course of the outfall sewer they asked $3,728 and were allowed $637. On various claims under project B $1,421.55 was allowed. All of these amounts were carried into the final estimate for which payment was made to and accepted by plaintiffs. With respect to the claim for change in the outfall sewer, which is the only one of the claims for extra compensation involved in this appeal, the engineer in passing upon the claim of plaintiffs, said:

"Item No. 2. The location of the 15-inch outfall sewer through the Perry property was shifted from its location at the time that the bids were submitted. The shifting of the line caused the contractor to excavate a good deal more rock than he would have had to move had the line not been shifted. On the other hand by shifting the line the town saved about $400.00 in the cost of construction and damaged the property through which the line was constructed considerably less than if it had been left on the original location, as the original location contemplated for the line being out of the ground for a large part of the way. According to his strict interpretation of the specifications, the contractor has no basis for his claim for this item, as article 18 provides as follows:

" 'Art. 18. The engineer may make alterations in the line, grade, plan, form, dimensions or materials of the work, or any part thereof, either before or after the commencement of construction; if such alterations diminish the quantity of work to be done, they shall not warrant any claim for damages or for anticipated profits on the work that may be dispensed with; if they increase the amount of work such increase shall be paid for according to the quantity actually done and at the price stipulated for such work under this contract.'

"However, I feel that we made the work more difficult than was contemplated at the time the work was bid on, and that regardless of article 18, the town is morally bound. By examining carefully the contractor's unit bids we find that he figured his excavation at $2.97 per cu. yd., and I recommend that he be allowed the difference in price between $2.97 per cu. yd. and $5.00 per cu. yd., for that excavation between 3 feet and 7 feet which would make a total allowance of $637.42."

Upon failure of plaintiffs to complete the work as provided by contract by December 31, 1926, the engineer began deducting the liquidated damages provided by contract from the estimates, deducting $10 per day for delay in the estimate on each project, on the theory that there was a separate contract as to each. On project A, $590 was deducted in estimate No. 4, covering January and February, and $610 on estimate No. 5, covering March and April. On project B, deduction was made on account of liquidated damages totaling $2,060 in estimates 6 to 12, inclusive. On February 17, 1927, plaintiffs in a letter to the engineer called attention to the fact that liquidated damages had been deducted from one of the current estimates and protested against the deduction, both on the ground that it was usual to postpone such matters until the end of the job and also on the ground that the progress of the work had been delayed by the defendant's change in plans. The engineer in a letter of February 22d, in answer to the protesting letter of plaintiffs, called attention to the provisions of the contract regarding liquidated damages and to those requiring the engineer to arbitrate matters in dispute. He stated that, at the time of preparing the estimate, he had heard of no reason why liquidated damages should not be retained and that the provisions of the contract had been carried out accordingly, but ex-

pressed willingness to rule on any question with regard to liquidated damages which might be raised. Plaintiffs in a letter to the engineer of February 23d, stated that later they would submit their claims with regard to the matter; but there is no evidence of their having done so, even at the time of presenting their claims in preparation for the final estimate, although the liquidated damages had been regularly deducted from current estimates, and although, as we have seen, the contract provided that a decision by the engineer should be a condition precedent to the right of the contractor to receive any money under the contract in case a question "touching" same should arise.

Check was issued to plaintiffs in accordance with final estimate of the engineer and accepted and cashed by them, but it appears that they wrote defendant at the time that they were not waiving any claim by so doing, but were accepting the check as payment on account in accordance with an understanding with defendant, and that if this did not accord with defendant's understanding, they would return the check. After some intervening correspondence, with respect to the arbitration of certain matters in difference, defendant wrote plaintiffs on October 24, 1928, that it would not arbitrate further but would adhere to the provisions of the contract which designated the engineer as final arbiter. The plaintiffs retained the moneys which they had collected, and something over two years later instituted this action for the purpose of recovering additional compensation.

■ Upon these facts, we think that there is no ground for the contention that plaintiffs were absolved from the provisions of the contract. In the first place, there was no such radical change in the nature of the work as to take it from under the provisions of the contract. The changes made in the sewer lines in project B and the change of course in the outfall sewer in project A were changes of the character frequently made in construction contracts, and such changes were provided for in the terms of the contract itself, article 18 thereof providing for alteration in line, grade, plan, etc., and article 22 providing for extra work. They were not changes radically altering the nature and cost of the work, as in Henderson Bridge Co. v. McGrath, 134 U. S. 260, 10 S. Ct. 730, 33 L. Ed. 934, and Salt Lake City v. Smith (C. C. A. 8th) 104 F. 457; nor were they made under a separate and independent contract as in Teer v. George A. Fuller Co. (C. C. A. 4th) 30 F. (2d) 30. The project as originally contemplated was substantially carried out, the changes made not adding greatly to the cost or changing to any considerable extent the character of work to be done. The case clearly falls within the principle of such cases as Coal & Iron R. Co. v. Reherd (C. C. A. 4th) 204 F. 859, Rajotte-Winters, Inc., v. Whitney Co. (C. C. A. 9th) 2 F. (2d) 801, and City of Mobile v. Shea (C. C. A. 5th) 127 F. 521.

■ In the second place, the parties proceeded under the contract throughout; and plaintiffs, having accepted its benefits, are not in position to repudiate its terms. The most radical change of which they complain is the change in the course of the outfall sewer, which was made before work was begun. They did not refuse to proceed with the work, nor did they treat this change as in any sense the requirement of work outside the contract; but they proceeded under a promise that their claim for additional compensation would be "ironed out" when the job was completed, and accepted payment of current estimates under the terms of the contract. When the work was finished, they filed claims with the engineer asking additional compensation under the contract and obtained thereby an award on their claims of several thousand dollars, which they accepted. They cannot approbate and reprobate in the same breath. Having accepted benefits under the contract, they will not be heard to contend that it is not binding upon them. See 10 R. C. L. 694; 21 C. J. 1209 and cases there cited.

■ Since, therefore, the plaintiffs are bound by the terms of the contract, they are bound by the award of the engineer made pursuant to its terms. As we said in City of Lexington v. Pratt (C. C. A. 4th) 31 F. (2d) 820, 821, where, as in the case at bar, the contract made the decision of the city engineer binding as to questions which might arise thereunder: "The rule is well settled in the federal courts that, where parties to a construction contract provide, as in this case, that the estimates and decisions of an architect or engineer as to questions arising in the execution of the contract shall be final and conclusive, such estimates and decisions have the effect of the award of an arbitrator. In the absence of fraud or such gross mistakes as imply bad faith or failure to exercise an honest judgment, they are conclusive and binding upon the parties. U. S. v. Gleason, 175 U. S. 588, 20 S. Ct. 228, 44 L. Ed. 284; Chicago, S. F. & C. R. Co. v. Price, 138 U. S. 185, 11 S. Ct. 290, 34 L. Ed. 917; Martinsburg & P. R. Co. v. March, 114 U. S. 549, 5 S. Ct. 1035, 29 L. Ed. 255; Omaha v. Ham-

mond, 94 U. S. 98, 24 L. Ed. 70; Penn Bridge Co. v. Kershaw County (C. C. A. 4th) 226 F. 728; Cook v. Foley (C. C. A. 8th) 152 F. 41, 51; Elliott v. Missouri, K. & T. R. Co. (C. C. A. 8th) 74 F. 707; Ogden v. U. S. (C. C. A. 5th) 60 F. 725. And this is also the general rule. 9 C. J. 772 and cases cited; note 56 Am. St. Rep. 314 et seq."

There was no evidence in the case of fraud on the part of the engineer or of such gross mistakes as would imply bad faith or failure to exercise an honest judgment. And there is no room for serious controversy as to the binding effect of his award on the claim of additional compensation for the construction of the outfall sewer. This was a question with relation to the work, it was submitted to him by the plaintiffs themselves, and we know of no principle upon which they can be relieved of the binding effect of his decision.

■ And we think that the parties are bound also by the decision of the engineer regarding liquidated damages. Whether or not there was delay in the completion of the work for which the town was entitled to liquidated damages, was certainly a question "in relation to the work" and a question which arose "relative to the fulfillment of the contract on the part of the contractor." Not only did article 2 of the contract make his decision final and conclusive on such questions, but it provided also that such decision, on any question "touching" the contract, should be a condition precedent to the right of the contractor to receive money under the contract. In other words, the contractor could not, under this provision, be paid the current or final estimates until questions affecting his right to be paid for the work performed had been determined by the engineer. One of the questions affecting his right to be paid was whether damages for delay were not deductible under the terms of the contract from any sums payable.

It is to be borne in mind that under article 10 of the contract it was provided that, if the contractor should fail to complete satisfactorily the entire work on or before the date stipulated, the town should deduct from payments due him the sum of $10 per day as liquidated damages, and that, if he should complete the work in advance of that date, he should be paid additional compensation of $10 per day for the time saved. The contract thus fixed the amount to be deducted from the contract price or added to it, all depending upon the completion of the work, which was essentially a question relative to the fulfillment of the contract which it was necessary to decide before the stipulated amount could be deducted from or added to payments made the contractor, as the contract provided should be done. Not only, therefore, does the submission of the question as to such matters fall within the express language used, as a question touching the contract and relating to its fulfillment, but it appears also that such submission was within the clear intendment of the parties, as without a determination of such matters it would be impossible to make the deductions or additional payments contemplated by the contract.

■ The purpose of providing for arbitration by the engineer in construction contracts of this character is to avoid the expense and uncertainty of a very difficult sort of litigation. The engineer who supervises the work is better qualified than any judge or jury can possibly be to determine such questions as whether the contractor has fulfilled the contract, what is the value of extra work ordered, or what extensions of time are proper for the completion of the work. And for the same reason, he is better qualified than any one else to determine when the work under the contract should be completed and the provision as to damages for delay applied. It is well settled that questions as to damages arising from delay in the performance of such contracts or the right to liquidated damages on account of such delay may be referred to arbitration by a clause in the contracts themselves; and that in such case the award of the arbitrator so named is binding upon the parties. Roberts, Johnson & Rand Shoe Co. v. Westinghouse Electric & Mfg. Co. (C. C. A. 8th) 143 F. 218; Weld v. First Nat. Bank of Englewood, 255 Ill. 43, 99 N. E. 72; Jonathan Clark & Sons Co. v. City of Pittsburgh, 217 Pa. 46, 66 A. 154, 156; Conneaut Lake Agr. Ass'n v. Pittsburg Surety Co., 225 Pa. 592, 74 A. 620; Ruch v. York City, 233 Pa. 36, 81 A. 891. As was well said by the Supreme Court of Pennsylvania in the Jonathan Clark & Sons Case, supra, which involved the binding effect of an award denying liquidated damages:

"Another complaint of the appellant is that the director had no authority to pass upon the claim of the city for $100 per day for delay in completing the work. One of the provisions of the contract was that the city might retain from the contractor, as liquidated damages for the noncompletion of the work within the time stipulated for its completion, the sum of $100 per day for each day's delay. The arbitrator found that neither Jonathan Clark & Sons Company nor the Mercantile

Trust Company had unduly delayed the construction of the reservoir, and that neither of the said parties should be charged the sum of $100 per day, nor any sum whatsoever, as liquidated damages for delay in completing the work. The delay may have been caused by the extra work required by the city; but, be this as it may, this claim was disputed by the appellee, and its settlement came within the very broad powers conferred upon the director, authorizing him to pass upon 'any question or dispute * * * respecting any matter pertaining to' the contract."

In some cases it has been held that, because of the wording of the arbitration clause involved, a submission of the question of damages arising from delay was not authorized. See Ruch v. York City, supra; Somerset Borough v. Ott, 207 Pa. 539, 56 A. 1079; Young v. Crescent Development Co., 240 N. Y. 244, 148 N. E. 510; Smith Fireproof Construction Co. v. Thompson-Starrett Co., 247 N. Y. 277, 160 N. E. 369. But for the reasons above stated, we think that the contract here clearly contemplated and required such submission.

■ And we think it equally clear that the right of the defendant to liquidated damages was passed upon by the engineer. As shown above, he determined the question in passing upon the estimates; and, upon protest by the plaintiffs, he notified them that he was acting under the contract in doing so and expressed his willingness to pass upon any questions which they might raise in regard thereto. So far as the record shows, they raised no such question either then or in filing their claim at the completion of the work in preparation for the passing of the final estimate, but accepted payment of the estimates, although deductions had been made from them on account of the liquidated damages, and raised no question with regard thereto when the engineer was determining the final amount to which they were entitled.

■■ As to the $1,200 item, the right of defendant to deduct this depends upon whether as a matter of law $10 per day was deductible as to each project on account of delay or only $10 per day for delay in the entire work covered by the contract. Without deciding whether this is a matter which falls within the provisions of the arbitration clause, we think that the parties did not invoke the decision of the engineer with regard to it and that consequently the court below was not precluded from considering the claim of plaintiffs with regard thereto by reason of his award. We think, also, that the court correctly held that only $10 per day was properly deductible under the contract for delay in the entire work and not $10 for delay as to each project.

It follows that the court was in error in not directing a verdict for defendant on the $1,427.85 and $2,060 items covered by the judgment, and that only as it relates to the $1,200 item should the verdict and judgment against defendant be allowed to stand. The judgment below will accordingly be reversed and the case remanded for a new trial in accordance with this opinion, unless the plaintiffs shall remit in writing on the judgment in the District Court all of that judgment in excess of $1,200. If the plaintiffs shall make such remittitur within sixty days, the judgment of the District Court shall stand as affirmed. The costs of this appeal shall be taxed against the plaintiffs, the appellees herein.

Reversed nisi.