MICHAEL COSTELLO *et al.* Defendants in Error, *vs.* F. A. DELANO *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1916—Rehearing denied October 11, 1916.*

1. CONTRACTS—*when final estimate on a railroad grading contract must be made by chief engineer.* Where a contract for railroad grading expressly provides that the work shall be done under the direction of the company's chief engineer, that the decision of the chief engineer shall be final as to the true construction and meaning of the drawings and specifications and that the chief engineer shall make the final estimate, the contractor cannot recover on a final estimate made by the assistant engineer in charge of the work, which estimate the company claims was fraudulent, notwithstanding the contract provides that whenever the term "engineer" is used it is understood to mean the chief engineer or his duly authorized agents, limited by the particular duties respectively intrusted to them.

2. SAME—*when general definition of "engineer," given in the contract, does not apply.* Where a contract for railroad grading makes frequent use of the word "engineer," and expressly states that whenever the term "engineer" is used it is understood to mean the chief engineer or his duly authorized agents, limited by the particular duties respectively intrusted to them, any act which the contract requires to be done by the engineer, without more, may be performed by the chief engineer or any assistant to whom the performance of the act has been intrusted, but where the contract specifies that certain things shall be done by the chief engineer,

then the general definition given does not apply and only the chief engineer can perform the act.

3. Same—*when payments on previous estimates do not raise any estoppel.* Where a contract for railroad grading provides for payments to be made on monthly estimates, the fact that payments during the progress of the work are made upon estimates prepared, in the first instance, by an assistant engineer and approved by the chief engineer does not estop the railroad company from disputing the final estimate of such assistant engineer, where the contract expressly provides that the monthly estimates shall not be conclusive evidence of the performance of the contract, wholly or in part, and requires the final estimate to be made by the chief engineer.

Craig, C. J., and Farmer and Duncan, JJ., dissenting.

Writ of Error to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Moultrie county; the Hon. W. G. Cochran, Judge, presiding.

Hugh Crea, Hugh W. Housum, and E. J. Miller, (J. L. Minnis, and N. S. Brown, of counsel,) for plaintiffs in error.

James Vause, Jr., Clarence W. Hughes, Carl D. Kiger, and F. J. Thompson, for defendants in error.

Mr. Justice Carter delivered the opinion of the court:

Defendants in error brought an action of assumpsit in the Moultrie county circuit court against the plaintiffs in error, who are the receivers of the Wabash Railroad Company, and recovered a judgment for $11,318.63, which the Appellate Court for the Third District affirmed, and the record has been brought to this court by writ of *certiorari.*

The action was brought to recover a balance alleged to be due under a written contract whereby the defendants in error agreed to provide all tools and appliances and perform all labor for the completion of an embankment for new main and side-tracks of the Wabash Railroad Company between the stations of Worden and Poag. The contract was

dated May 22, 1912, and provided for the commencement of work within ten days from its date and the completion of the work by August 31, 1912. It contained the following provisions:

"It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the chief engineer of said receivers and that his decision as to the true construction and meaning of said drawings and specifications shall be final, and he shall also determine and set forth in his final estimate the amount and kind of all work performed and materials furnished by the contractor under this contract, including all extra work, (meaning all work not covered by this contract,) which final measurements and estimates shall be binding on both parties to this agreement. It is also understood and agreed by and between the parties hereto that such additional drawings and explanations as may be necessary to detail and illustrate the work to be done are to be furnished by said engineer, and the contractor agrees to conform and abide by the same so far as they may be consistent with the purpose and intent of the original drawings and specifications referred to in article 1. Whenever in this contract the term 'engineer' is used it is understood to mean the chief engineer of the receivers or his duly authorized agents, limited by the particular duties respectively intrusted to them. * * * On or about the first day of each month during the progress of this work an estimate shall be made by the engineer of the relative value of the part of the work done up to such time, and upon his certificate of the amount being presented to the proper official of the receivers, or such disbursing agent as the receivers may appoint, the amount of said estimate, less a retained ten per cent and less previous payments, shall be paid to the contractor on or about the 20th day of each month at the nearest disbursing point of the receivers to the contractor's office: *And provided further,* that upon completion and acceptance of the work under this contract a final estimate

shall be issued for the same and the ten per cent previously retained paid in full. * * * It is further mutually agreed between the parties hereto that no estimates given or payments made under this contract, except the final certificates or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials. * * * In the foregoing specifications it is understood and agreed that the chief engineer of the Wabash railroad is in charge of the work and he may appoint such assistants as he may select. Whenever the specifications refer to the judgment, direction, decision, approval, etc., of an employee of the Wabash railroad, they design to and mean that the chief engineer or one of his assistants is intended and referred to. The decision of the chief engineer shall be final as to the intent and meaning of these specifications."

Work was begun under the contract in May, 1912, but on account of the failure of plaintiffs in error to secure the necessary right of way, as alleged in the declaration, its completion was delayed, the time of performance was extended and the work was finally completed in December, 1912.

It is alleged in the declaration that A. O. Cunningham was chief engineer of the plaintiffs in error and as such chief engineer had general charge and supervision of the construction work to be done under the contract; that during the progress of the work he appointed T. P. McDonough, an engineer, as his duly authorized agent and placed him in charge of the work, with full power and authority to direct the manner in which the work should be done under the terms of the contract and instructed defendants in error to carry on the work under the contract in accordance with the directions of McDonough; that the defendants in error built and constructed the road-bed in accordance with the directions of McDonough and fully completed the same as they were directed to do by him; that on or about the

first day of each month while the work was being done an estimate was made by McDonough of the relative value of the work done up to that time, and that he issued certificates of the amount of work so done and performed by defendants in error under their contract and presented the same to the proper official of the plaintiffs in error, and the plaintiffs in error from time to time, on such monthly estimates, issued voucher checks to the plaintiffs for the full amount of each estimate, less a retained ten per cent and less previous payments, which amounts were paid by the plaintiffs in error on or about the 20th day of each month, and that all of these monthly estimates made by McDonough were sent by him to Cunningham, the chief engineer, and have since been retained by him. It is further averred that after the work was completed under McDonough's direction he made a final estimate of the value of all the work done under the contract and deducted therefrom previous payments made by the defendants on the monthly estimates and added thereto the ten per cent retained percentage, and that there is now due and unpaid on such final estimate the sum of $20,000.

The plaintiffs in error filed a plea of the general issue and several special pleas, which denied that McDonough was authorized by the chief engineer to make any final estimate as to the work done under the contract and averred that he made no final estimate on the authority of the chief engineer on which to base a settlement between the plaintiffs and the defendants; that the estimate which he did make was excessive to the extent of 75,000 cubic yards, and that such estimate was fraudulently made, with intent to cheat and defraud the plaintiffs in error. There was a plea of set-off for $5000, which the plaintiffs in error claim to have overpaid the defendants in error on the contract.

The final measurements and estimates of the chief engineer of the plaintiffs in error of the amount and kind of all work performed and materials furnished under the con-

tract, determined and set forth in his final estimate, were by the agreement to be binding upon both parties. The declaration set forth and relied upon the final estimate of T. P. McDonough for the establishment of the balance due them under the contract, and this document was introduced in evidence. An important question, therefore, is whether or not this was such a final estimate as the contract contemplated. McDonough was not the chief engineer of the plaintiffs in error. He was the engineer who had immediate supervision of the work of the defendants in error in the performance of their contract. He was appointed by the chief engineer and worked under his direction. The contract provided that the work should be done under the direction of the chief engineer, it was the decision of the chief engineer which was to be final as to the true construction and meaning of the drawings and specifications, and it was the chief engineer who was to determine and set forth in his final estimate the amount and kind of work performed and materials furnished under the contract and whose final measurements and estimates should be binding upon both parties. The word "engineer" occurs frequently in the contract, and it is expressly stated that whenever the term "engineer" is used it is understood to mean the chief engineer of the receivers or his duly authorized agents, limited by the particular duties respectively intrusted to them. Therefore, whenever the contract refers to the act of an engineer, without more, it includes not only the chief engineer but any of his assistants or agents within the limits of the particular duties intrusted to them, respectively, but when the contract states that a thing shall be done by the chief engineer, thus limiting the act to that officer, the general definition of "engineer" given in the contract does not apply. The parties had the right to select an arbiter whose decision upon any question concerning the contract which they saw fit to leave to his decision should be final, and when they have by express words selected the chief engineer

for that office the duty will not be extended to any or all of his subordinates by the general definition of the term "engineer" alone. Under the contract the term "engineer" includes the agents of the chief engineer duly authorized, within the limits of their authority, as well as the chief engineer himself, but the term "chief engineer" does not include his subordinates and has no other than its ordinary meaning,—that is, the chief engineer in person.

The contract was prepared by the plaintiffs in error and executed without change by the defendants in error, and the latter rely upon the rule that ambiguous language in a contract will be construed most strongly against the party who prepared the contract and used the doubtful words. The rule does not apply because the language is not ambiguous. The definition of "engineer" calls attention to the difference between the use of that term and the term "chief engineer."

The defendants in error rely upon the conduct of the parties from the beginning in paying according to the monthly estimates made by McDonough. Those estimates were made by virtue of the provision of the contract that on or about the first day of each month an estimate should be made by the engineer of the relative value of the part of the work done up to such time, and that upon his certificate of the amount being presented to the proper officials of the receivers, or such disbursing agent as the receivers might appoint, the amount of the estimate, less ten per cent and previous payments, should be paid. No money was paid, in fact, on the estimate of McDonough. He presented to his superior, Cunningham, a report of the work done each month. The money was not paid upon such statement. Cunningham was not a disbursing officer, but upon his approval of the estimate and its presentation to the proper official it was paid. It was Cunningham's estimate, and not McDonough's, which was accepted as authority for payment by the disbursing officer of the receivers.

The defendants in error insist that by the course of conduct in regard to these monthly estimates the plaintiffs in error are estopped to go behind the estimates made from time to time by McDonough but are bound by them and by his final estimate, and they rely upon the case of *Chicago, Santa Fe and California Railroad Co. v. Price,* 138 U. S. 185. In that case the work was done under the immediate supervision of a division engineer, who forwarded to the assistant chief engineer, on the first day of each month, an estimate of the work done on each section of his division, upon which estimate the assistant chief engineer ascertained the amount due the contractors at the beginning of the month, and these monthly estimates were approved by both the assistant chief engineer and the chief engineer. This course was pursued until the work was substantially completed and was accepted and taken possession of by the company. Subsequently a subordinate engineer of the company, who had not supervised the work, made another estimate and classification, which were also approved by the chief engineer, and the company claimed that the monthly estimates upon which the plaintiffs had been paid from time to time were much too large. It was held that the last monthly estimate of the work done on the division which was in controversy, followed by the acceptance by the company of the whole, was a certificate of complete performance, which entitled the plaintiffs to be paid in full according to the contract. There was no fact indicating fraud or such gross mistake as to imply bad faith in the making of the various estimates, and the conclusion of the court stated in the final sentence of the opinion was: "The mere incompetence or mere negligence of the division or chief engineer does not meet the requirements of the case unless their mistakes were so gross as to imply bad faith." The company was therefore held bound by the estimates of the work made in accordance with the contract. The estimates were all certified in writing by the chief engineer, as required by

274 — 28

the contract. In the present case it is provided in regard to the monthly estimates that they shall not be conclusive evidence of the performance of the contract, either wholly or in part. The purpose of the contract was to provide for the making of partial payments for the work done from time to time during its progress, but to provide that the final estimate should be made by the chief engineer and that the previous estimates should not be binding upon him in making his final estimate. The parties were competent to make such a contract, and in the absence of fraud or such gross mistake as to imply fraud the decision of the chief engineer would be binding upon both parties. It was expressly declared that the estimates should not be conclusive evidence of the performance of the contract, either wholly or in part, and under this clause there could be no estoppel against the plaintiffs in error by reason of the monthly estimates or payments. The defendants in error knew that the monthly estimates were not binding and had no right to rely on them as binding. Under the provisions of this contract the final estimate contemplated was that of the chief engineer. The estimate of his subordinate submitted to him for approval, which he failed or refused to approve and adopt, is not his final estimate and cannot be made the basis of recovery against the plaintiffs in error on the contract. Under the declaration and evidence the court should have instructed the jury to find a verdict for the defendants.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

CRAIG, C. J., and FARMER and DUNCAN, JJ., dissenting.