ROBERTS, JOHNSON & RAND SHOE CO. v. WESTINGHOUSE ELECTRIC
& MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. January 15, 1906.)

No. 2,207.

1. ARBITRATION AND AWARD—CONTRACTS—PRACTICAL CONSTRUCTION—CONCLU-
SIVENESS OF AWARD.

A contract for the purchase of certain machinery provided that if any question should arise during the progress of the work, at the acceptance of the plant, or "in regard to settlement," such question should be referred to the architect or engineer for decision. The parties submitted to the engineer for decision claims of defendant for damage caused by delay in performance on plaintiff's part, and the engineer, after a full hearing, determined that defendant had suffered from the delay loss in excess of the contract price. Held, that the submission of such question constituted a practical construction of the contract that such claim was within the terms of the submission.

2. SAME—CONCLUSIVENESS OF DECISION.

A contract for the purchase of certain machinery provided that if any questions should arise at the acceptance of the plant, or regarding settlement, they should be referred to the architect or engineer for decision, reserving the right of final decision by two disinterested parties, one chosen by each party to the agreement, and in the event of their failure to agree they to choose a third, and the decision of the two referees to be binding on both parties. Held that, where a claim for plaintiff's delay was submitted by both parties to the engineer under such provision, the decision of the engineer, in the absence of fraud or gross mistake, without the exercise of the reserved right of appeal, was conclusive on the parties.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Arbitration and Award, §§ 440–450.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Virgil Rule and Rhodes E. Cave, for plaintiff in error.

S. L. Swarts (Montague Lyon, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCH-REN, District Judge.

HOOK, Circuit Judge. The Westinghouse Electric & Manufacturing Company sued the Roberts, Johnson & Rand Shoe Company to recover the value of certain electrical machinery sold and delivered to the latter. By its answer, which was in two counts, and the evidence in support thereof, the defendant asserted (1) that the machinery had been sold to defendant and installed in its factory pur-

suant to a written contract dated July 17, 1903, which provided that the entire installation be completed and ready for service by November 1, 1903; that the plaintiff had been duly informed of the great importance to the business of defendant of full performance of the contract within the time specified, but that through inexcusable delay of the plaintiff the machinery was not furnished and fully installed until February 22, 1904, and the defendant thereby sustained damage in an amount largely in excess of the plaintiff's claim; that, having made its claim for the damage sustained, both parties, in compliance with the provisions of the contract, submitted the differences between them to the engineer in charge of the electric construction and his decision thereon was in favor of the defendant, and that such decision was in full force and effect and constituted a bar to the prosecution of the plaintiff's action; and (2) an affirmative counterclaim for the damage averred to have been sustained by defendant, with prayer for judgment therefor against the plaintiff.

During the trial, which was to a jury, the Circuit Court held that the provisions of the contract with reference to submission of differences between the parties to the engineer and what appeared to have been done thereunder were insufficient to constitute a defense to the plaintiff's action. Thereafter, and at the conclusion of the evidence, the Circuit Court in charging the jury also announced its opinion that, while defendant had doubtless sustained damage by the plaintiff's delay in installing the machinery, the evidence introduced furnished no reliable data for the ascertainment of the amount thereof. Thereupon the defendant withdrew its counterclaim set up in the second count of its answer. The charge of the court was in effect a direction to find for the plaintiff for the amount of its claim and a verdict of that character was accordingly rendered. The defendant now asks to have the action of the Circuit Court reviewed as to both branches of its defense. It contends that it suffered an involuntary nonsuit as to its counterclaim, and that it is therefore the duty of this court to review the evidence and the ruling of the court thereon. We do not think so. At the conclusion of the charge to the jury, in the course of which the Circuit Court announced that the evidence under the counterclaim was insufficient to show with proper definiteness the amount of damage sustained, the defendant reserved a general exception, but failed to indicate any part thereof which it claimed to be objectionable. With the permission of the court the defendant then withdrew its counterclaim. In other words, it voluntarily dismissed it without prejudice. It did not comply with the practice which obtains in respect of involuntary nonsuits, and no exceptions were preserved so as to impose upon this court the duty to review the evidence to determine whether the view of the Circuit Court was well founded. We therefore turn to a consideration of that branch of the case which relates to the submission of the controversies between the parties to the engineer, and his decision.

The evidence conclusively showed that a draft of a written contract between the parties had been prepared, and, although it was not signed by them, it was thereafter recognized as containing the

evidence of their agreements and stipulations excepting as to certain modifications which were subsequently made. The written correspondence between the parties contained frequent allusions to the writing as being their contract, and frequent references were also made to definite and specific provisions in it. So conclusive was the evidence upon the subject that the case should be considered as though, subject to the modifications referred to, the original draft of the contract had been duly executed by both parties. This was also the theory of the Circuit Court. The sixth and ninth paragraphs of the contract are important in the consideration of the question now before us, and it is not contended that they were subsequently eliminated or modified in any way. The sixth paragraph will be referred to hereafter. The ninth is as follows:

"Changes: Should it prove desirable to make any changes in the work, the architect or engineer may direct such changes in writing, and a fair and equitable addition to or deduction from the contract price shall be made, the amount to be determined by the architect or engineer. Such changes shall not extend the date of completion, nor modify the obligations of the contractor in any way."

The only important change in the contract which we need advert to here was one in respect of an item of machinery. A few days after the date of the contract the defendant found that it was advisable to have a generator of lower speed than the one specified, and it was thereupon ordered of the plaintiff by the engineer in charge. The letter which contained the order, July 29, 1903, recited: "The contract of July 17 to remain unchanged in all other respects." There was a conflict in the testimony whether this change was responsible for the delay of between three and four months in the final installation of the machinery and whether there was an agreement or understanding that the time limitation in the written contract for full compliance, namely, November 1, 1903, was thereby dispensed with. But whether this question was open to investigation under the defense now being considered depends upon the proper construction of the sixth paragraph of the contract and the effect to be attributed to the submission by the parties of the matters in controversy between them to the engineer and the decision which he rendered.

Paragraph 6 of the contract:

"Questions arising. Should any questions arise during the progress of the work, at the acceptance of the plant, or regarding settlement, such questions shall be referred to the architect or engineer for decision; but there is reserved the right of final decision by two disinterested parties; one chosen by each party to this agreement, and in the event of the parties so chosen failing to agree, they are to choose a third, the decision of two of said referees to be binding upon both parties."

The differences which arose between the parties resulted in the following correspondence:

March 4, 1904, a letter from the engineer to the plaintiff, the Westinghouse Company:

"I beg to acknowledge receipt of your Mr. Baetz several favors of 11th ult. reference f. o. b., and 1st inst. reference F. P. B., regarding payments on the Roberts, Johnson & Rand Shoe Co. contract of July 17th, 1903. Answering will say, that paragraph 6 of this contract reads as follows:

" 'Questions Arising. Should any questions arise during the progress of this work, at the acceptance of the plant, or regarding settlement, such questions shall be referred to the architect or engineer for decision.'

"Some questions regarding settlement have arisen and the Roberts, Johnson & Rand Shoe Co., are preparing the details of certain claims they expect to make on account of expense they have been put to on account of your failure to deliver this apparatus within the time agreed upon. The justice of these claims is now being considered by the architect and myself, and you will be advised further about them in the near future."

March 17, 1904, a letter from the engineer to the plaintiff:

"In re Your Contract of July 17, 1903, with the Roberts, Johnson & Rand Shoe Co., of this City, for Electrical Apparatus:

"Answering the request of your Mr. Clegg for further particulars regarding the claim made by the Shoe Co. I have to advise you as follows:

"Paragraph 6 of this contract provides that, 'Should any questions arise during the progress of the work, at the acceptance of the plant or in regard to settlement such question shall be referred to the architect or engineer for decision.' I should like to have your interpretation, as well as that of the Shoe Company, as to what each of you consider my duties are under this clause of the contract. An early expression of your views on the subject will be much appreciated. I shall not shirk any responsibility by reason of having been the engineer under this contract, but I should like to have the views of both sides before being called upon to discharge this unpleasant duty.

"In order that you may have a clear understanding of the claims submitted by the Shoe Company I will here enumerate them and ask for your views. * * *

"If I am to be called upon to adjust this matter I should like, as I said in the beginning, have your views in regard to these claims."

The portion of this letter which is omitted for the sake of brevity is a statement in detail of the various items of damage claimed by the defendant.

March 8, 1904, a letter from the plaintiff to the engineer:

"Your letter of the 17th is received and I will give the claims made by Roberts, Johnson & Rand Shoe Co. very careful consideration. My understanding of the terms of paragraph six of the contract is that we can appeal to you for protection against precisely such unreasonable claims. Our understanding is that the contract selects you as an arbitrator to pass on claims because of your familiarity with the trade customs, and we will within the next few days lay our views before you and feel confident that you will find same so reasonable that they will have your approval."

April 2, 1904, a letter from the engineer to the plaintiff, in which he says that he will do his "utmost to make a decision in accordance with the facts and the equities of all parties in interest"; that he cannot agree with plaintiff that there was any alteration in the contract date; that the change from high to low speed machine was made only after plaintiff's promise that there should be no change in date of delivery, and that such matter was fully covered by the written order of the low speed machine on July 29, 1903. He also makes certain criticisms of the amount of defendant's claim of damage, and invites the plaintiff to furnish him with data covering the period mentioned by the defendant.

It will be observed from the foregoing that the plaintiff was fully and definitely advised of the character and extent of the defendant's claims, that its attention was directed to the sixth paragraph of the

contract providing for decision by the engineer of questions regarding settlement between the parties, and that its construction thereof was invited. The plaintiff, in response, said that its understanding was that the contract selected the engineer as an arbitrator to pass upon such claims, and that it would within a few days make its presentation. And, more than this, the plaintiff knew that its claim of an extension of the time for the completion of the contract was also within the scope of the submission to the engineer. The position of the defendant as to the duty and power of the engineer was the same as the plaintiff's, inasmuch as it invoked that particular paragraph of the contract and set in motion the proceeding thereunder. Even were this part of the contract ambiguous, we have a construction of it by the parties themselves and a voluntary course of action by them in accordance with such construction. The rule of law in such cases is a familiar one, and it has been applied to the submission of controversies under an arbitration clause of doubtful purport. Morse on Arbitration and Award, 62.

On April 26, 1904, the engineer announced his decision. In a letter of that date to the plaintiff and the defendant, he said:

"In reply to your verbal and written requests for some action on my part, under paragraph six, of the contract of July 17th, 1903, between you, for certain electrical apparatus, I find as follows:

"The controversy hinges upon the failure of the contractors to have the apparatus ready on the contract date, and the losses which the purchaser claims to have sustained by reason of such failure.

"I have given hearings and have received written data from both parties, and have considered all the points which have been advanced by each of them. As a result of this investigation I am convinced that the Roberts, Johnson & Rand Shoe Co. has, through the delay of the Westinghouse Electric & Mfg. Co. in completing their contract, suffered loss in excess of the contract price.

"This being my conclusion, I cannot see my way clear to approve payment of any part of the contract price."

Though no witness testified that evidence was received and hearings were had, the reasonable inference is that the proceedings were conducted with full regard to the rights of both parties. Affirmative support of such inference may be found in the recitals in the letters of intention to make presentation of the facts to the engineer, of his desire that it be done, and in the statement in his decision that such course had been pursued. Indeed, it is not asserted to have been otherwise. Nor is the decision attacked upon the ground of fraud, or such gross mistake as implies bad faith or a failure to exercise an honest judgment. Guild v. Andrews (C. C. A.) 137 Fed. 370.

The parties in interest having agreed that their contract contemplated a decision by the engineer of the claims of the defendant for damage caused by delay in performance on the part of the plaintiff, and this necessarily included the fact and extent of such delay, and the parties having also acted upon such construction by actually submitting those matters to the engineer and obtaining his decision, we are unable to perceive upon what just ground we may ignore their course of action and determine their rights upon an independent consideration of the letter of their stipulation. And by this observation we should not be understood as indicating an opinion that the

clause of the contract providing for reference to the engineer of questions "regarding settlement" is not sufficiently comprehensive to include the questions actually submitted to and decided by him. The exigencies of the case require no opinion upon that matter. It is sufficient to say that a case is presented in which the construction of the parties, acted upon by them, should be followed by the courts. It is also contended that the paragraph of the contract under consideration is indefinite, in that it provides for reference of questions for decision to the "architect or engineer." The answer is that the expression is in the alternative and the parties in interest selected the engineer. We pass by the fact that the architect expressed in writing his concurrence in the decision.

The plaintiff invokes the doctrine of Hamilton v. Insurance Co., 137 U. S. 370, 11 Sup. Ct. 133, 34 L. Ed. 708, that a provision in a contract for submission to arbitration not making compliance therewith a condition precedent to a right of action is collateral and independent, and that a breach thereof will support a separate action for the damage sustained, but cannot be pleaded in bar to an action on the principal contract. The difficulty in applying that rule to the case before us is that here there was actually a submission and a decision. Had the parties not proceeded under the arbitration clause of their contract, the rule referred to might be applicable, for there was no provision therein suspending the right of action until arbitration or making it dependent in any way upon the result. But, when the plaintiff and the defendant came to the question of settlement under their contract the latter preferred its claims for damage caused by the plaintiff's delay, they submitted the claims to the engineer, and after a hearing he decided in favor of the defendant. And that decision still remains in force and effect. The plaintiff simply ignores it upon the ground that the proceeding was an idle ceremony.

Two things were contemplated by the sixth paragraph of the contract: First, the decision of certain matters by the engineer; and, second, the reservation of the right to secure the decision of two disinterested persons selected in the manner specified. The decision of the engineer is not made final and binding by the express terms of the contract, while there is a definite provision to that effect in respect of a decision by the others. It is said, therefore, that the absence of such a provision in the former and its presence in the latter clause indicate that it was not contemplated that a decision of the engineer should be effective for any purpose. But this is not a reasonable construction of the contract. If the first clause of the paragraph stood alone, a decision fairly made by the engineer as to matters within his jurisdiction to determine would be final and binding without an express stipulation to that effect in the contract. This would be so whether a favorable decision of the engineer be regarded as an agreed condition precedent to the right of the plaintiff to sue, or, on the other hand, the clause be construed to be a submission to arbitration. In the first instance the conclusive quality of the action of the engineer, not being attacked upon the ground of fraud or such gross mistake as implies bad faith or a failure to exercise an honest

judgment, would be inferred from the general context and purport of the contract (United States v. Gleason, 174 U. S. 588, 604, 20 Sup. Ct. 228, 44 L. Ed. 284; Kihlberg v. United States, 97 U. S. 398, 401, 24 L. Ed. 1106); and in the latter instance it would be equally conclusive because "the law implies an agreement to abide the result of an arbitration from the fact of submission." Smith v. Morse, 9 Wall. 76, 19 L. Ed. 597. The omission of a provision that the decision of the engineer shall be conclusive is only significant in the relation of the two clauses of the paragraph to each other. When there has been, as there was in this case, a decision of the engineer fairly made, the right reserved by the second clause is obviously one in the nature of an appeal, and it was in view of a permissible exercise of this reserved right that there was omitted from the first clause a provision for finality or conclusiveness. This reserved right is not one to ignore without cause or reason a decision of the engineer whether rendered upon his own initiative or upon invitation and request of the parties to the contract. It was certainly not intended that the reserved right to adopt additional proceedings when unexercised, should per se vacate and render wholly futile a prior decision by the engineer. To so hold would be in effect to withdraw from the contract of the parties words which they employed in framing it and to repudiate the construction which they placed thereon after a controversy arose. Said the plaintiff to the engineer: "Our understanding is that the contract selects you as an arbitrator to pass on claims because of your familiarity with the trade customs"—and the claims referred to were those of the defendant of which the plaintiff had been fully advised. The decision of the engineer is still in full force and effect, and we are of the opinion that the plaintiff should not have been permitted to wholly ignore it. The claims that, when the machinery was finally installed, it was not as contracted for, and that the plaintiff refused to subject it to a test were not pressed when the matters of controversy were submitted to the engineer, and no mention is made of them in his decision. We therefore have treated them as having been abandoned.

The judgment of the Circuit Court is reversed, with directions to grant a new trial.