(97 Misc. Rep. 127)

### LEARY et al. v. CITY OF WATERVLIET.

(Supreme Court, Trial Term, Albany County.    October 20, 1916.)

1. MUNICIPAL CORPORATIONS ⬦⇒356—CONTRACT—RIGHTS OF CONTRACTOR.

   A contractor should be held to a strict compliance with the terms of the contract with a municipality as shown by maps, drawings, plans, and specifications submitted, and should take every reasonable precaution to advise himself as to what he is undertaking and is reasonably expected to do.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 888; Dec. Dig. ⬦⇒356.]

2. MUNICIPAL CORPORATIONS ⬦⇒356—CONTRACT—RIGHTS OF MUNICIPALITY.

   A municipality should be held to a strict accountability on its part to the terms of a contract, and it should not receive the benefit of work done and materials furnished by a contractor through a technical construction of terms of a contract, but the city should take every reasonable precaution through its engineer, or expert, to ascertain the true conditions, and should do all that it reasonably undertakes to do.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 888; Dec. Dig. ⬦⇒356.]

3. MUNICIPAL CORPORATIONS ⬦⇒374(2)—CONTRACT—CONSTRUCTION.

   Provisions of the general specifications of a contract with a municipality for the construction of a sewer, providing that the contractor shall make

---

⬦⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

claims for damages within five days in a written statement to the engineer, and that an itemized statement of damage be filed with the engineer by the 15th of the following month, and that unless such statement be made contractor's claim may be forfeited, do not constitute a condition precedent to the contractor's right to recover, but at most limit plaintiff's right to recover at common law, and are therefore matters of defense to be pleaded by defendant as such.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. ☞374(2).]

4. MUNICIPAL CORPORATIONS ☞360(3)—CONTRACTS—CONSTRUCTION.

Where a contract and specifications for the construction of a sewer contained drawings showing its profiles, and indicated that a rock formation as shown on the plans passed below the lower line of the sewer at both ends, it appearing that there were only 550 cubic yards of rock to be excavated, but on making the excavation the contractor found 1,650 cubic yards of rock on this section, none of which rock appeared on the surface, the city is liable for the extra work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 892; Dec. Dig. ☞360(3).]

5. MUNICIPAL CORPORATIONS ☞360(1).—CONTRACTS—CONSTRUCTION—EXTRA WORK.

Where the contract provided for the excavation of 550 cubic yards of rock, and on excavation 1,650 cubic yards of rock were found, the question whether this amount was within the contract being fairly debatable and its determination surrounded by doubt, the contractor was not obliged to abandon the contract, but could continue with the work, and subsequently recover damages measured by the value of extra work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 892; Dec. Dig. ☞360(1).]

6. MUNICIPAL CORPORATIONS ☞360(1)—CONTRACTS—EXTRA WORK.

Where a contract with a municipality for the construction of a sewer provided that where pipes were encountered the contractor should not interfere or remove the same without the consent of the parties owning them, should it be necessary to remove the pipes, the contractor to notify the respective owners, and if they failed, the city would cause the pipes to be removed, where pipes belonging to a water company and steam pipes belonging to a church were encountered, and both the owners and the city neglected to remove them, after notification, the contractor could recover costs occasioned by extra work in going around the pipes in both cases.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 892; Dec. Dig. ☞360(1).]

Action by James F. Leary and another against the City of Watervliet. Judgment for plaintiff.

Joseph McSweeney, of Rochester (William F. Lynn, of Rochester, of counsel), for plaintiffs.

Albert J. Danaher, of Watervliet (William V. Cooke, of Albany, of counsel), for defendant.

RUDD, J. The plaintiffs made a contract with the defendant on the 20th of June, 1913, covering the construction of what is known as the "Storm Sewer System," the work to be done according to certain plans and specifications. The work was done and payment has been made by the city to the extent for which the city admits its liability, and this action is brought to recover moneys which the plaintiffs allege are justly due for work done outside of, and not contemplated by, the contract, and which work plaintiffs allege was neces-

sary to be done by reason of the demands of the city, which could not have been contemplated by the plaintiffs as contractors when the contract was entered into.

[1] A contractor should be held to a strict compliance with the terms of the contract in the doing of all work according to the terms of the contract as illumined and explained by the maps, drawings, plans, and specifications. The contractor should take every reasonable precaution to advise himself as to what he is undertaking and as to what he is reasonably expected to do.

[2] The city, on its part, should take every reasonable precaution and opportunity of informing itself through its engineers and experts as to what are the true conditions under which the contractor will be called upon to perform, also on its part to do in the way of preparation all that it reasonably undertakes to do, to the end that the contractor will not be required to do what he could not reasonably be expected to do. In other words, it is quite as important that a municipality should be held to as strict an accountability on its part as is the contractor, and that the city should not receive the benefit of work done and materials furnished by a contractor, through a technical construction of the terms of a contract, all to the advantage of one party who had the greatest opportunity to know what was actually required and expected to be done.

[3] We will first consider the general objection, interposed by the city as against the recovery by plaintiff, before we consider the merits of the particular items constituting plaintiffs' claim as they are presented under the evidence. The defendant invokes as a bar to plaintiffs' recovery sections 35 and 36 of the general specifications, which are a part of the contract, as follows:

(35) *"Contractor's Claim for Damage.*—If the contractor shall claim compensation for any damage sustained by reason of the acts of the commission or its agents, he shall, within five days after the sustaining of such damage, make a written statement of the nature of the damage sustained, to the engineer."

(36) *"Statement of Damage to be Filed with the Engineer.*—On or before the fifteenth day of the month succeeding that in which any such damage shall have been sustained, the contractor shall file with the engineer an itemized statement of the details and amount of such damage, and, unless such statement shall be made as thus required, his claim for compensation may be forfeited and invalidated, and he shall not be entitled to payment on account of any such damage."

There is no proof of either compliance or noncompliance with these sections. The defendant contends, in effect, that the provisions of those sections constitute a condition precedent to plaintiffs' recovery, failing to comply with the sections or to show waiver, the plaintiffs' claim for recovery must fall. We cannot agree with the contention of defendant as to the effect of sections 35 and 36. The court in Hoye v. Pennsylvania Railroad, 191 N. Y. 101, 83 N. E. 586, 17 L. R. A. (N. S.) 641, 14 Ann. Cas. 414, distinguishes the cases in which the right of action has been created by statute or cases against municipalities in which the statute has provided for notice of claim to be presented for audit as a condition precedent to a right to recover, and the case at bar. The requirements of sections 35 and 36 do not create a condition precedent to the right to recover, but at most

make a limitation of the plaintiffs' right to recover at common law, and are therefore matters of defense which must be pleaded by the defendant as a defense. There is here neither pleading nor proof of the noncompliance by the plaintiffs with the provisions above mentioned. In Hoye v. Pennsylvania Railroad it was held that, while under the common law common carriers are liable for an injury resulting to property through negligent handling while in the course of transit, the carrier may be permitted to relieve himself of strict common-law liability by inserting reasonable provisions in the bill of lading as to such limitation, but such provisions, being in derogation of the common law, must be strictly construed, and are not to be considered conditions precedent to the right to recover, unless it clearly appears that such was the intent or it is so specifically stated.

The defendant calls attention to the provisions of the specifications, which are part of the proposal, providing that the plaintiff—

"has carefully examined and fully understands the contract, plan and specifications hereto attached, and has made a personal examination of the site of the proposed work and the character of material to be encountered."

[4] The plaintiffs contend that they had carefully examined the plans and made a personal examination of the site and of the character of the material to be encountered, and that such examination led them to plan that the rock which was to be excavated was in the bottom of the water course, remote from any buildings, and that the rock was of a disintegrated nature, and that the excavation which they had to do in the part of the city where there were buildings, in what is known as the gas house section, was only earth. Attention is called to this last provision of the specifications for the reason that a serious contention arises out of what is known in this litigation as the first cause of action. The unit price for excavating the rock was $2.75 per cubic yard. It was estimated that there were 1,800 cubic yards of rock excavation in the whole contract. There were, as a matter of fact, 2,200 cubic yards of rock excavation, but the plaintiffs do not complain of the excess of the amount over the estimate. Forming a part of the contract were drawings showing profiles of the sewer. Upon these profiles certain lines appeared for the bottom of the sewer and the contour of the surface, and on two or three of the plates there was shown a heavy dark line on each plate marked "Approximate Rock Line." It indicated where the rock disappeared or appeared only below the bottom of the sewer. The portion of the system on which this rock was shown was what is called the "dry river section." This was an open channel, dry in summer, and in which at certain seasons water flowed. In the gas house section rock was shown on the plans for a portion of the section, and then was shown to pass below the lower line of the sewer at both ends. So that it appeared that the rock which the plaintiffs contracted to take out was substantially in the dry river portion, was 2 or 3 feet in depth, that buildings were not nearer than 100 or 150 feet, but that upon the doing of the work it was developed that the rock in the gas house section, instead of disappearing, as the line on the drawing indicated it, continued 723 feet farther, and ran from a minimum of 6 or 8 feet deep to a maximum of 14 to 16 feet. None of this rock

appeared on the surface. When the contractors met with this situation, under protest, they continued to do the work, excavating 1,650 cubic yards of rock on this section, although it appeared that there was only 550 yards of rock shown on the plan. The proof shows that the excavating of the rock, at the greater depth in the thickly built up section of the city, was reasonably worth $7 per yard, instead of $2.75; that the damage and loss actually sustained by the plaintiff by reason of this situation was the difference between $7 per yard and $2.75 per yard, amounting to $4.25 per yard for 1,650 yards, aggregating altogether $7,012.50. This was hardly a reasonable variation found in conditions or quantities. The contractors take certain chances; that is, the natural chances.

[5] The contractors, as above stated, are bound by the contract, and, said contract being based upon certain papers, including the drawings, the city fairly should be bound, to a reasonable extent at least, by the drawings which it presents to the contractors for their information. The city has every possible advantage in knowledge as to the conditions which exist; and, while it calls upon the contractors to find out for themselves, it can hardly be said that that means that the contractors should actually excavate before they begin their contract in order to find out what they may thereafter be called upon to do. If the city says that rock disappears from the surface and is not included within the line of excavation at about this point or that point, it should be held that the city meant about what it said.

It was clearly proven that a reasonable value for the excavation of the rock in the depth in which it went and in the particular place in which it was found was worth $4.25 per cubic yard in excess of the contract price. If so, and we are here bound by that testimony, the city had the value of the work done by these contractors.

The contractors were not obliged to abandon the contract; they were privileged to continue and receive the contract price and recover their damages in an action at law. Beckwith v. City of New York, 148 App. Div. 658, 133 N. Y. Supp. 202; People ex rel. Powers & Mansfield Co. v. City of Troy, 124 App. Div. 916, 108 N. Y. Supp. 1144; 191 N. Y. 523, 84 N. E. 1118.

It was held in Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 140 Am. St. Rep. 633, that where a municipal representative requires a contractor to do something as covered by his contract with the municipality, and the question whether the thing required is embraced within the contract is fairly debatable and its determination surrounded by doubt, the contractor may comply with the demand under protest and subsequently recover damages measured by the value of the extra work or materials required of him, even if it turns out that he was right and that the thing was not covered by his contract, and, on the other hand, if the thing required is clearly beyond the limits of the contract, the contractor may not, even under protest, do it and subsequently recover damages. It can hardly be said that the contractors had agreed to take out 1,650 yards of rock in the gas house section of the city of Watervliet. The matter was certainly debatable, and it is brought within the decision above cited.

The city now claims that the unit price of $2.75 was controlling, irrespective of where the rock was found, and that there was no breach.

on the part of the city. The course pursued by the plaintiffs was correct. They continued the work, doing what certainly was not anticipated either by the contractors or the city. It could not have been anticipated by the city, or the drawings would not have been made, indicating the disappearance of the rock at the point in the gas house section. If it was not anticipated by either party, there is no bad motive or bad faith on the part either of the city or the contractors. The contractors did the work, and the city should be willing to pay the true measure of the damage which the contractors sustained by reason of being called upon to do work at a unit price of $2.75 per cubic yard when it should have been $7 per cubic yard.

For the reasons thus briefly outlined the plaintiffs are entitled to recover under the first cause of action.

The second and fourth causes of action set forth in the complaint are eliminated.

[6] The third cause of action consist of two items, one for damage claimed on account of the city's failure to remove pipes at Fifteenth street. The contract provided that where pipes were encountered, the contractors should not interfere or remove the same without the consent of the party owning the pipes. Should it be necessary to remove the pipes, the contractors should notify the respective owners, and if they failed, the city would cause the pipes to be removed. The water pipes belonging to the water company were in the way, the contractors notified the company, the pipes were not removed, the contractors notified the city, and the city did not remove the pipes. The contractors had to go around, and the expense incurred by reason thereof was $498.40. The other item in this cause of action is damage claimed for having to go around the passageway from the church to the boiler house. This item rests upon the same paragraph in the specifications as did the last item. The obstruction consisted of steam pipes passing in a conduit from the boiler house to the church, which conduit was covered over by a passageway. When the contractors came to this point in the work, they notified the church authorities to remove the obstruction; they did not remove it. The city was then notified, but it did not remove it. The contractors then had to build a road, carrying their excavation around the obstruction, and excavate under the pipes by hand work, and lay the concrete in a more expensive manner, which costs amounted by the evidence in the case to $592. These three items, cost of excavating, $7,012.50, the two items of obstruction, $498.40, and $592, amounting in all to $8,102.90, are allowed.

Findings may be prepared and judgment entered accordingly.