## J. A. LA PORTE CORPORATION v. MAYOR AND CITY COUNCIL OF BALTIMORE.

### No. 5421.

District Court, D. Maryland.

Feb. 12, 1936.

796

Bartlett, Poe & Claggett, of Baltimore, Md., for plaintiff.

R. E. L. Marshall and Paul F. Due, City Sols., both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit by the plaintiff, a corporation of the state of New York, against the mayor and city council of Baltimore, a municipal corporation under the laws of the state of Maryland, arising out of a written contract whereby the plaintiff, hereinafter called the contractor, agreed to construct for the mayor and city council of Baltimore, hereinafter called the city, the so-called Prettyboy Dam in the northern part of Baltimore county, Md., about 3 miles southwest of the town of Parkton, across the Western branch of the Gunpowder river. It was an extensive and costly project for the enlargement of the water supply system for the city of Baltimore. The contractor's suit is embodied in a declaration which contains 23 counts alleging

claims in the aggregate sum of $850,000. To all but 5 of these counts, namely, Nos. 13, 14, 15, 17, and 21 (on which the city has joined issue and which are not now before the court), the city has filed demurrers and the question involved in the present proceeding is whether these demurrers should be sustained or overruled as to any or all counts.

The basis of this court's jurisdiction is supported by the requisite averments as to diversity of citizenship and amount in dispute.

Apart from any technical description of the various parts of the work under the contract which are involved in the present controversy, and which the contractor claims it properly performed but for which it has not been properly compensated, the work as a whole may be grouped into three broad classes: (a) regular work under the contract; (b) extra work under the contract; and (c) work falling entirely outside of the contract. The first 4 counts of the declaration are the usual common counts, and all of the remaining 14 counts with which we are here concerned, namely, counts Nos. 5, 6, 7, 8, 9, 10, 11, 12, 16, 18, 19, 20, 22, and 23, relate either to regular or extra work under the contract except the twenty-third count, which, as hereinafter explained, relates to matters entirely unprovided for by the contract.

The formal written contract contains 51 pages of closely printed "General Specifications," numerous provisions of which are involved in the present proceeding. The grounds of the demurrers are numerous, but we will confine our consideration to two grounds, because, as hereinafter explained, upon the answer thereto depends the sufficiency or insufficiency of the demurrers. Briefly stated, the first of these grounds is that paragraph 22 of the general specifications makes the findings of the chief engineer of the city final and conclusive upon the contractor with respect to performance under the contract; that, therefore, the obtaining of the chief engineer's certificate of satisfactory completion of each and every part of the work is a condition precedent to the right to recover for each and every part. Paragraph 22 reads as follows: "To prevent disputes and litigation, the Chief Engineer shall in all cases determine the amount, quality and acceptability of the work and materials which are to be paid for under the contract; shall determine all questions in relation to said

work and materials and the performance thereof, and shall in all cases decide every question which may arise relative to the fulfillment and the construction of the terms and provisions of the contract. His determination, decision and estimate shall be final and conclusive in respect to the fulfillment thereof or the construction of the terms and provisions thereof, and in case any question should arise between the parties touching the contract, or the construction of its terms, and provisions, such determination, decision and estimate shall be a condition precedent to the right of the Contractor to receive any money under the contract."

Briefly stated, the second ground for the demurrers is that compliance with paragraph 62 of the general specifications is likewise a condition precedent to the right on the part of the contractor to recover. This paragraph is as follows: "If the Contractor shall claim compensation for any damages sustained by reason of the acts of the City, or its agents, he shall, within five days after the sustaining of such damage, make a written statement of the damages sustained to the Engineer. On or before the fifteenth day of the month succeeding that in which any such damage shall have been sustained, the Contractor shall file with the Engineer an itemized statement of the details and amount of such damage, and unless such statement shall be made as thus required, his claim for compensation shall be forfeited and invalidated, and he shall not be entitled to payment on account of any such damage."

None of the counts now before us assert that either of these paragraphs of the general specifications has been complied with, or even refer to them. Nor is reference made to the issuance or nonissuance of a certificate of completion by the city's chief engineer (except in the twenty-second count), the contractor denying, for reasons hereinafter more fully set forth, that compliance with either one of them is a condition precedent to its right to recover.

In addition to voluminous, detailed recitals throughout the general specifications with respect to work falling within the first class, namely, regular work under the contract, there is specific provision for work of the second class; namely, extra work. This is covered by paragraphs 67 and 68, which are as follows:

"67. The Contractor shall perform extra work, for which there is no quantity

and price included in the contract, whenever, to complete fully the work contemplated, it is deemed necessary or desirable, and such extra work shall be done in accordance with the specifications therefor, or in the best workmanlike manner as directed. This extra work will be paid for at a unit price or lump sum to be agreed upon previously in writing by the Contractor and the Engineer, or where such a price or sum cannot be agreed upon by both parties, or where this method of payment is impracticable, the Engineer may order the Contractor to do such work on a 'Force Account' basis. No work will be paid for as extra work upon which a unit price has been bid under the contract.

"68. No order for extra work, at any time or place, shall in any manner or to any extent relieve the Contractor of any of his obligations under the contract; all extra work orders being given in accordance with the contract and to be considered a part of the same and subject to each and all the terms and requirements thereof."

■■ We reach the conclusion that as to each of the counts now under consideration which embraces work of either the first or second class, the demurrer must be sustained for the following reasons. First, we find that obtaining the chief engineer's certificate of satisfactory completion, pursuant to paragraph 22 of the general specifications, is a condition precedent to recovery upon every item of such work. It is well settled that when parties to a construction contract provide that· estimates and decisions of an architect or engineer as to questions arising in the execution of the contract, shall be final and conclusive, such provisions have the effect of an award of an arbitrator, and, in the absence of fraud or such gross mistakes as imply bad faith or failure to exercise an honest judgment (none of which is charged in the counts here under consideration), they are conclusive and binding upon the parties. See Corporation of Charles Town v. Ligon (C.C.A.) 67 F.(2d) 238, and cases therein cited.

■ Second, we believe that paragraph 22 is properly to be construed as binding upon both the city and the contractor. This paragraph recites that the chief engineer's "determination, decision and estimate shall be final and conclusive in respect to the fulfillment thereof [the contract] or the construction of the terms and provisions thereof, and in case any question should arise *between the parties* touching the contract, or the construction of its terms, and provisions, such determination, decision and estimate shall be a condition precedent to the right of the Contractor to receive any money under the contract." (Italics inserted.) It is reasonable from this language to conclude that it was intended to bind both parties. The contractor apparently agrees with this interpretation, but asserts that paragraph 22 is directly contrary and repugnant to paragraph 65, and, therefore, both must be declared inoperative. Paragraph 65 is as follows: "The City shall not, nor shall any department or officer thereof, be precluded or estopped, by any return or certificate made or given by the Chief Engineer or other officer, agent or appointee of the City, under any provision of the contract, from showing the true and correct amount and character of the work done and materials furnished by the Contractor or any other person under the contract, at any time before or after the final completion and acceptance of the work and payment thereof pursuant to any such return or certificate; or from showing at any time that any such return or certificate is untrue and incorrect or improperly made in any particular; or that the work or any part thereof does not in fact conform to the specifications; and the City shall not be precluded or estopped, notwithstanding any such return or certificate and payment in accordance therewith, from demanding and recovering from the Contractor such damages as it may sustain by reason of his failure to comply with the specifications."

■ Summarized, the argument of the contractor is that the only reasonable construction to be placed upon paragraph 65 is that thereby the city is never intended to be bound by its chief engineer regardless of his having certified that the contractor's work, or any part of it, is satisfactory; but that on the contrary, the city may always open the question of its willingness to accept the work and repudiate, modify, or accept its chief engineer's findings. But we believe that this is an unnecessary and strained construction of paragraph 65 when analyzed, as it must be, in relation to paragraph 22 and the general specifications as a whole. That is to say, we feel that the two paragraphs may and should be construed together, and that, reasonably interpreted, they mean that the chief engineer's cer-

tificate is conclusive upon both parties, in the absence of fraud or such gross mistake as to imply bad faith or failure to exercise an honest judgment, in which cases, and only then, the city shall have the right to invoke the provisions of paragraph 65. See City of Trinidad v. Hokasona (C.C.A.) 178 F. 438. In this case, which was a suit by a contractor against a municipality for work upon a water supply system, the court resolved the prima facie inconsistency between two clauses very similar to the paragraphs in the present suit, by holding that the engineer's certificate was intended to be conclusive on both parties, in the absence of fraud or gross mistake implying bad faith or failure to exercise an honest judgment. The court said, 178 F. 438, at page 441:

"Plaintiff, by an amended petition, relied on a certificate of an engineer as final and conclusive as to his performance of the contract and the balance due him. There was a certificate of the engineer, but the city denied its conclusiveness. The contract contains two provisions upon the subject. The first is: 'To prevent all disputes and litigation, it is further agreed, by and between the parties of this contract, that the engineer (meaning thereby the individual or individuals at any time holding the position, or acting in the capacity of engineer of the Trinidad water department) shall be referee in all cases to determine the amount of the quantity of the work which is to be paid for under this contract, and to decide all questions which may arise relative to the fulfillment of this contract on the part of the contractor, and his estimates, and decisions shall be final and conclusive.'

"The second is that the contractor shall not be entitled to payment until the work is completed to the satisfaction of the engineer and he shall have given his certificate to that effect, whereupon the city shall pay the whole amount due excepting such sum or sums as it may lawfully retain. It is followed by this proviso: 'Provided, that nothing herein contained be construed to affect the right hereby reserved by the said city to reject the whole, or any portion of the aforesaid work, should the said certificate be found, or known to be inconsistent with the terms of this agreement, or otherwise improperly given.'

"There is an apparent inconsistency between the first provision and the proviso of the second, and it is claimed by the city that the latter negatives the conclusive character of the engineer's certificate. Were full effect given the proviso, the action of the engineer, while binding on the plaintiff, would be inconclusive as to the city, and the result would be directly opposed to the express purpose of the first provision. We think the two should be construed together and to mean that, conformably with the approved rule, the certificate is conclusive upon both parties, in the absence of fraud or such gross mistake as implies bad faith or a failure to exercise an honest judgment. Guild v. Andrews, 70 C.C.A. 49, 137 F. 369; Roberts, Johnson & Rand Shoe Co. v. Westinghouse, etc., Co., 74 C.C.A. 348, 143 F. 218."

Such interpretation of the two paragraphs in the present suit, whereby they are reconciled one with the other, requires, it is true, a construction of one of them, paragraph 65, which narrows or limits its language. That is to say, taken literally, the words employed in paragraph 65 are admittedly so broad as to seem, when read by themselves, to give to the city the right, under all circumstances, to question the action of its agent, the chief engineer. The entire paragraph has just been quoted, and its phraseology need not be repeated. But such literal construction would produce an unconscionable result. This may have been the intent of the city when the paragraph was incorporated in the specifications. Also, when viewed from the contractor's side, we are not unmindful of the general principle that one is presumed to know the contents of a document that he signs. However, courts should not lend aid to unconscionable results but should try, wherever possible, to give a sensible meaning to the language employed. It is not sensible to isolate any one of the paragraphs of the specifications and arbitrarily to accept its language in its broadest aspect.

If two or more paragraphs, prima facie in direct conflict, can be reconciled without doing violence to the fundamentals of the contract, such reconciliation must be supported. Adopting this ruling, the construction which we have just given to paragraph 22 seems to be the more sensible. The question then presents itself, Can an equally sensible construction be placed upon paragraph 65 so that the two paragraphs may be made reasonably harmonious and not unconscionable, in so far as one of the parties is concerned? We answer this question in the affirmative, and believe the

desired result is obtained by limiting paragraph 65 to situations where it is reasonable to assume that the city is entitled to additional means of protection, namely, to situations where its own servants, to wit, its chief engineer or other agents or employees, resort to willful misconduct in derogation of the city's interests, or if not to willful misconduct, nevertheless, fall into such gross errors as would imply bad faith or a failure to exercise an honest judgment against which the city may very well be entitled to protection, just as in the case of willful misconduct.

We are not unmindful of the fact that paragraph 65 thus interpreted amounts to no more than a statement of the law as it exists independently of any written stipulation to this effect; that is, the city would have such right anyway. See Corporation of Charles Town v. Ligon, supra, and cases therein cited. But this fact is not controlling. Parties may, and often do, merely restate their legal rights which are inherent in their agreements. In any event, where parties seek the aid of the court and make unsatisfactory or directly opposite assertions as to their respective intents in entering into an agreement, clearly neither one can be heard to complain if prevented from enforcing the contract in a manner that would be grossly unfair to the other. This is the principle by which, as we have seen, the court reconciled seemingly repugnant provisions, of a strikingly similar character, in the City of Trinidad Case, supra, and we believe it is a sound rule to follow.

We are, of course, not to be understood as holding that the law will never support agreements whereby one party puts himself at the mercy, so to speak, of the other party. What we do hold, however, is that before agreements of this character should be enforced by the courts, the mutual intent for such undertakings must be clear. For example, if the other interpretation of paragraph 22 be adopted, namely, that it binds only the contractor, then we have no repugnancy between it and paragraph 65 when the latter is given the broadest possible construction, but merely one-sidedness; that is, an agreement more favorable to one party, the city, than to the other, the contractor. But such one-sidedness, if clearly intentional, is not contrary to public policy; the agreement is not rendered any the less mutually obligatory. As was said in Elliott Contracting Co. v. City of Portland, 88 Or. 150, 171 P. 760, at page 762, in a suit by a contractor against a municipality under a contract containing a clause very similar to paragraph 22 in suit:

"While it might be improvident for the plaintiff to agree that the measurement of its work should be left to the defendant's officer, we are not aware of any law preventing it from making such a stipulation.

"It is not contrary to public policy, and if it chose thus to put itself at the mercy, so to speak, of the other contracting party's servant, it had a right to do so. It is analogous to instances where one person agrees to construct a certain piece of work to the satisfaction of the owner. It has been decided many times that in such cases the owner must be satisfied, except that he cannot withhold his satisfaction arbitrarily or fraudulently."

See, also, Pennsylvania Cement Co. v. Bradley Contracting Co. (C.C.A.) 7 F.(2d) 822. There the suit was by a property owner claiming damage to his property by reason of the work of a contractor in building a subway for the city of New York. But it involved clauses of a contract similar to those in suit because the property owner based his suit upon the contract between the city and the contractor. In denying recovery for failure to show that the property owner's claim had ever been submitted to the city's engineer, the court said (7 F.(2d) 822, at pages 826, 827):

"But in ascertaining the meaning of a contract the intention is to be ascertained from examining the whole contract and not detached portions of it. And it was provided in article 24 of the contract that 'every question which may arise relative to the fulfillment of this contract on the part of the contractor' shall be determined by the engineer, and further that 'his determination shall be final and conclusive upon the contractor, and in case any question shall arise between the parties hereto, touching this contract, such determination and estimate shall be a condition precedent to the right of the contractor to receive any money under this contract.' This constituted the engineer a kind of court to determine 'every question' relative to whether or not the contractor had fulfilled his contract. * * *

"It is true that article 33 of the contract contained a provision to the effect that the city was not to be precluded or estopped by any return or certificate made by any engineer from demanding and recovering from the contractor such damages as it

might sustain by reason of his failure to comply with the contract. Assuming, for the purposes of the argument, that by virtue of article 33 the adjacent property owner, although he is not mentioned therein, is also not estopped under like circumstances, we do not think that in this proceeding he is helped by the provisions of article 33. That article does not dispense with the necessity of a finding by the engineer, and its finding is made conclusive as to him, and therefore is necessary in all cases arising under the contract, even though the finding may not be conclusive upon the city."

To the same effect is Barker v. City of New York (C.C.A.) 242 F. 350, 351. There the court said (242 F. 350, at pages 360–362):

"In the instant case the contract provides in article 3 as follows: 'To prevent disputes and litigations, the engineer shall in all cases determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract, shall determine all questions in relation to said work and the construction thereof, and shall in all cases decide every question which may arise relative to the fulfillment of this contract on the part of the contractor. His estimate and decision shall be final and conclusive upon said contractor, and in case any question shall arise between the parties thereto, touching this contract, such estimate and decision shall be a condition precedent to the right of the contractor to receive any money under this contract.'

"This court is of the opinion, following the doctrine recognized in Merrill-Ruckgaber Co. v. U. S., supra [241 U.S. 387, 36 S.Ct. 662, 60 L.Ed. 1058], that by virtue of the above provision the engineer had authority to determine every question as to the amount the contractors were entitled to be paid under the contract, and that his decision is final and conclusive as against the contractors, in the absence of fraud, although not conclusive upon the city of New York. His final certificate was his decision as to what the contractors were entitled to receive for the work performed, and, as there is no charge of unfairness or fraud, his decision stands, and the court is not at liberty to go behind it. * * *

"Article 13 of the contract provides as follows: 'The inspection of the work shall not relieve the contractor of any of his obligations to fulfill his contract as herein prescribed, and defective work shall be made good, and unsuitable materials may be rejected, notwithstanding that such work and materials have been previously overlooked by the engineer and accepted or estimated for payment. If the work or any part thereof shall be found defective before the final acceptance of the whole work, the contractor shall forthwith make good such defect in a manner satisfactory to the engineer.' * * *

"That article was inserted in the contract to prevent disputes and litigations, and the engineer's decision was, as we have seen, made final and conclusive on the contractor."

See, also, O'Brien v. Mayor, etc., of City of New York, 139 N.Y. 543 at page 576, 35 N.E. 323.

The contractor relies upon the case of Nelson Bennett Co. v. Twin Falls Land & Water Co., 14 Idaho, 5, 93 P. 789, as being one in which a conclusion was reached contrary to that which we have reached, and claims that the decision in that case should be followed as being more consonant with sound public policy and equitable principles.

An examination of the Idaho decision, just referred to, clearly discloses that the decision of the chief engineer was not allowed to control, primarily because the lower court found that he had exhibited an arbitrary and wanton disregard of the contractor's plain rights under the contract such as to be equivalent to fraud, or had committed mistakes to the contractor's prejudice, so gross and palpably wrong as to leave no doubt in the mind of the lower court that grave injustice had been caused the contractor. In short, in remanding the case the appellate court rested its decision primarily upon the ground that whereas it was conceded that in contracts of this kind, stipulations for the submission of questions of difference and controversies to the decision of the chief engineer have been generally sustained, there is an equally firmly established exception to the effect that the chief engineer's decision will not be binding upon the contractor if involved in fraud or so arbitrarily or dishonestly made as to be tantamount to fraud. There the contract contained clauses very similar to paragraphs 22 and 65 in suit. It is true that the court found these clauses to be repugnant, and for that reason refused to give any force or effect to either of them, although, as just explained, the de-

cision was rested primarily upon another ground.

What the Supreme Court of Idaho actually said on the question of the alleged repugnancy of the two clauses may best be indicated by the following quotation from the second opinion of the court, rendered on petition for a rehearing. The court said, (93 P. at pages 800,.801): "This court, in effect, held that a stipulation in a contract, requiring the submission of differences and controversies arising thereunder to the chief engineer of one of the contracting parties as. umpire, and leaving the measures, estimates, and classification of the work to him, and providing that his measurements and classifications shall not estop the .party employing the engineer from disputing or questioning them, will not be enforced by the courts as a binding obligation against the other party to the contract. We still adhere to that rule. The contract provides as follows: 'Said second party shall not be estopped by any estimate made by its engineer from showing at any time the true and correct amount and character of the work which shall have been done and materials which shall have been furnished by said first party, or by any person under this agreement.' There the contract expressly provides that the second party shall not be bound by the estimates of its engineer of the amount and character of the work. We take it that that applies to all estimates of the several varieties of material required to be excavated and removed, and classification of the same. So far as the umpire is concerned, his decision is made binding upon the first party and not binding upon the second, and, for that reason, the courts of this state will not enforce such a one-sided provision." Previously, in its original opinion, the court had said (93 P. 795): "It is clear to us, on the other hand, that a stipulation in a contract, requiring the submission of any given questions or controversies to an engineer as umpire, in order to be binding upon one party, must be made obligatory on the other, and, in so far as it is made inoperative by the contract against one party, it will be held inoperative by the courts as against the other."

Conceding that the aforegoing statements of the court on the point directly pertinent to our present inquiry must be treated as. not merely dicta but as part of the ratio decidenti and, therefore, a ruling of the court, we are not disposed to follow such ruling. The decision stands as an isolated one upon this point, at least in so far as any reported cases to which we have been referred, or which we have found, are concerned. Furthermore, in the course of the opinion no authorities are cited in support of the precise point, although it is true the cases herein relied upon had not yet been decided.

Although we thus reach a conclusion, the ultimate result of which, as will be disclosed, will be more favorable to the city, and seemingly harsh upon the contractor, we feel it is essential to make it clear that contracts of the character of the one in suit are open to very severe criticism, as are also both parties to them, because, by reason of the inexcusably obtuse manner in which such contracts have been drawn and adopted, they at once invite litigation of the most involved and protracted character, thus casting upon the courts unnecessary and very onerous work which they should not be called upon to perform. In other words, if parties to a contract see fit to adopt provisions which their own experts are unable to interpret intelligently, or to explain satisfactorily, why they were included, as is true in the present case, they can scarcely be heard to complain if a court of law finds it difficult or impossible to ascertain just what force and effect was intended to be given to such provisions, if, indeed, any intent at all lay behind their inclusion.

This criticism applies with greater force to the city than to the contractor, for the additional reason that, when doubt arises as to its true meaning, a written agreement is to be construed the less favorably towards the one who drafted it. Still, the contractor is not free from criticism. We are not unmindful of the common argument that in public work projects of this nature, the contractor is not a free agent, that if he wants the job, he must take it as the city requires or leave it entirely alone. But in the eyes of the law, this argument is unsound. Legally speaking, the contractor is a free agent. It may be true that as a practical matter he finds it difficult, if not impossible, to control the red tape and excessive restrictions with which municipalities and other governmental agencies seek to protect themselves. But in the eyes of the law, this is no justification for any one blindly acceding to unreasonable demands or signing contracts without acquainting himself with the language em-

ployed, and insisting upon language that expresses, at least reasonably well, what is intended. There is no evidence of any compulsion or duress in the present case of which the court may take notice. If a city desires to be so arbitrary or so unbusinesslike as to insist upon contracts so ambiguous and unsatisfactory in their terms as is the present one, legally it may do so, but such practice is to be discredited. Similarly, if a contractor is not sufficiently strong-willed and businesslike to insist upon proper corrections and clarifications being made in the document before becoming a party to it, the courts cannot control him; and if, as a result, he comes out at the short end of the bargain, he has only himself to blame. It is the duty of the courts in such a case to lend their best thought and effort towards untangling the complicated situation, and giving to the contract the fairest interpretation possible, in the light of established principles. More than this, courts are not permitted to do. They may not rewrite agreements of the contracting parties, just because the parties have failed to express in the written document what they should have expressed or what they intended to express, in the absence of fraud or gross error which would be tantamount to fraud if the courts did not reconstruct the document. It is all the more inexplicable that the parties to the present contract should have been so remiss, when we consider the very large amount of money involved.

Turning now to the second ground which forms the basis for the city's demurrers to the various counts of the contractor's declaration, which is that compliance with paragraph 62 of the specifications is also a condition precedent to the right of the contractor to recover, we are inclined to the view that this is not true with respect to any work done under the contract, that is, whether regular or extra work under the contract. Again we are faced with an inexcusably obscure, poorly phrased provision, productive of further needless controversy and speculation as to the real intent of the parties. However, it becomes unnecessary to decide this question because we have already concluded that as to all counts of the declaration embracing both of these classes of work, the demurrers of the city must be sustained for failure to allege that paragraph 22 has been complied with; and for the further reason, that none of the counts, except the twenty-third, embraces work outside of the contract, and,

as hereinafter explained, the demurrer to that count must be sustained because its subject-matter, however classified, was entirely unauthorized.

■ There remains, therefore, to be considered in relation to paragraph 62, merely the question whether it controls with respect to tort claims if, as hereinafter explained, part of the eighth count is a claim for damages sounding in tort. We are of the opinion that paragraph 62 properly construed does embrace tort claims. It refers to claims by the contractor for "compensation for any damages sustained by reason of the acts of the City, or its agents. * * *" Second, when paragraph 62 is considered in relation to other paragraphs of the specifications, one becomes further confirmed in the conviction that paragraph 62 is intended to have restricted application. For example, paragraph 33 reads as follows:

"From the commencement of the work until the completion of the same, the Contractor shall be solely responsible for the care of the work covered by this contract, and for the materials delivered at the site intended to be used in the work; and all injury or damage done to the same from whatever cause, as well as any damage done by him or his employees, in the performance of the work required hereunder, to the work of other contractors of the City, shall be made good by him at his own expense before the final estimate is made.

"He shall provide suitable means of protection for all materials intended to be used in the work and for all work in progress, as well as for completed work.

"He shall take all necessary precautions to prevent damage or injury to work in progress of construction, by flood, freezing or from the inclemencies of the weather at any and all times when necessary. The method used for this purpose shall be subject to the approval of the Engineer."

Summarized briefly, this paragraph makes the contractor solely responsible for all injury or damage caused to the work or any materials delivered at the site of the work for use therein. Similarly, the contractor, on his part, is entitled to protection against possible injury by employees of the city, to his own or his subcontractor's machinery or equipment, or to his own or his subcontractor's employees. Such protection is afforded by paragraph 62.

The contractor makes the additional contention that compliance with paragraph 62 is not to be treated as a condition precedent, but rather that the obligations therein imposed with respect to filing statements of the damages alleged to have been sustained, are matters to be proved, relying upon Leary v. Watervliet, 97 Misc. 127, 160 N.Y.S. 1042. ·However, we are disposed to give to paragraph 62 a literal interpretation with respect to tort claims.

It follows from the aforegoing conclusions which we reach with respect to the interpretation to be placed upon the various pertinent paragraphs of the specifications in the contract, that the demurrers must be sustained to all of those counts of the declaration which cover work of either the first or second class; that is (1) regular work under the contract, or (2) extra work under the contract, for failure to show compliance with paragraph 22. The demurrer must also be sustained to the twenty-third count, because embracing subject-matter which was without proper authorization, however classified; and also, must be sustained to any count embracing a tort claim, for failure to show compliance with paragraph 62. It, therefore, becomes necessary to examine each of the counts in order to ascertain their subject-matter.

The first four counts, as already explained, are the common counts for goods sold and delivered, work and labor done, money paid, or found to be due. The fifth count is in the nature of a summary of the plaintiff's claim. Attached thereto, and forming a part of it, is a bill of particulars described as also covering the four common counts. In other words, the first five counts must be taken as intended to cover the same causes of action which are set out in more detail in the remaining eleven counts with which we are here concerned.

The sixth count clearly embraces only work under the contract, because it expressly calls for excavation at specified rates per cubic yard, which are stipulated in the contract. Furthermore, it is admitted by the contractor that this count is under the contract. Therefore, the demurrer to this count must be sustained.

The seventh count relates to the same excavation which was on the west side of the dam only, and is taken out of the contract and therefore removed from the operation of paragraph 22 of the specifications, by paragraph 7 of the letter of August 25, 1931, between the parties, which embraces certain modifications in the contract but otherwise expressly preserves, intact, the original agreement and specifications (see paragraph 9 of the letter). Paragraph 7 of the letter reads as follows: "It was further agreed that there was certain excavation on the west side which your company contended was not classified properly. This matter was placed in the hands of yourself and Mr. Cornell for determination as to the proper classification to be applied."

By this paragraph it will be seen that adjustment of differences with respect to this particular excavation was placed in the hands of two specified arbitrators. Since, as is alleged in this count, these arbitrators have not been able to agree and to render a decision, settlement of the dispute is a matter which devolves upon the court, that is, it involves questions of fact to be determined by the court, and, therefore, the city's demurrer to this, the seventh count, must be overruled.

· The first part of the eighth count relates to a dispute over the time when cobble rock should be applied, that is, whether it should be passed through the concrete mixer, as the city required, or should be applied later, to the mass concrete, as the contractor contended. This is clearly a question to be determined by the chief engineer, pursuant to the provisions of paragraph 22 of the specifications. Therefore, the city's demurrer to this first item of this count must be sustained. As to the remaining item of this count, namely, claim for injuries alleged to have been caused by the city to the concrete mixer as a result of the unwarranted requirement on the part of the city with respect to the mixing of cobble rock, if this be treated as a tort claim, it is governed by the provisions of paragraph 62 of the specifications, compliance with which, as we have explained, is a condition precedent with respect to claims of this character. Since there is no allegation of such compliance, the demurrer must also be sustained to this part of the eighth count. Similarly, if it is treated as a claim based rather on breach of contract, paragraph 22 controls, requiring that the demurrer be sustained.

The ninth count, briefly summarized, relates to the disposal of excavated material, and is covered by the compromise agreement contained in paragraph 2 of the letter of August 25, 1931, whereby the contrac-

tor agreed to accept "as full payment for all excavation, both common and rock, which has been done, and will be necessary to complete the work," the unit price under the contract. This unit price included the cost of the disposal of the excavated material. (See paragraphs 103, 105, and 106 of the specifications.) Paragraph 4 of the letter provides: "It is further understood that your company will make no claims whatever, other than as provided for in this letter, for additional or extra work or compensation in any form, due to the above change in plan or increase or decrease in quantities." Since the subject-matter of this count involves a dispute as to the disposal of excavated material, the question was one which was required to be decided by the chief engineer, pursuant to the provisions of paragraph 22 of the contract. Therefore, the city's demurrer to this count must be sustained.

The tenth count embraces a claim based on the alleged fact that the contractor was required to excavate additional material in order to build certain concrete steps greater in number than were originally contemplated. It is based upon the theory that there has been a breach of the warranty implied in the specifications in that the city had impliedly guaranteed that the work called for by the plans and specifications was practicable and capable of being performed, whereas, due to the character of the rock encountered, the plans and specifications were absolutely impracticable and the work was not capable of being performed, but that, nevertheless, the city persisted in directing the contractor to proceed subject to constant modifications, with the result that the work finally had to be abandoned as impractical with resultant wasteful effort and the incurring of large, additional expense on the part of the contractor. This item is also covered by the letter of August 25, 1931, which, as we have already pointed out, provides for acceptance of unit prices, and these embrace all the work covered by this count. Paragraphs 2 and 4 of this letter, as we have seen, release the city from any obligation to pay for any additional work other than stipulated in the letter. This count is clearly predicated upon an alleged disagreement between the parties as to the amount due for the work done; a question to be determined by the chief engineer pursuant to paragraph 22 of the specifications. The demurrer to the tenth count, therefore, must be sustained.

The eleventh count refers to the same work covered by the tenth count, and the amount claimed is the same, but a somewhat different theory is asserted, namely, that wrongful orders were given by the city, necessitating wasteful effort and unnecessary work, thereby causing large additional expense to the contractor. The same principle governs, however, and therefore the eleventh count is likewise demurrable.

The twelfth count alleges that the city, without warrant, prevented the contractor from further concreting a certain section of the dam. The question as to the city's right so to do is clearly a matter within the province of the chief engineer under paragraph 22 of the specifications. Therefore, the city's demurrer to this count must be sustained.

The sixteenth count is based upon alleged unwarranted delay on the part of the city in furnishing to the contractor the requisite plans so that the contractor might progress the work to its conclusion. This alleged misconduct on the part of the city antedated the letter of August 25, 1931, and therefore, paragraph 4 of this letter governs. In any event, if paragraph 4 of this letter does not control, paragraph 22 of the original specifications would. Thus, the city's demurrer to this count must be sustained.

The eighteenth count charges that the city, without warrant, required the omission of cobble rock from a portion of the concrete, thereby increasing the cement content which, in turn, increased the cost. This was a dispute covered by paragraph 22 of the specifications and, therefore, the city's demurrer to this count must be sustained.

The nineteenth count alleges unauthorized revocation of a permit by the city to pour concrete. This count is also to be read in the light of paragraphs 4 and 10 of the letter of August 25, 1931, and, in any event, the dispute is one which fell within the province of the chief engineer to settle, under paragraph 22 of the specifications and, therefore, the city's demurrer to this count must be sustained.

The twentieth count charges an unwarranted requirement by the city that the contractor rub down a second time certain of the dam's surfaces, in alleged violation of paragraph 135 of the specifications, thus producing additional cost to the contractor. That paragraph provides that "the sur-

faces of all concrete finished against forms shall be smooth, free from projections, and true to form," etc., but does not specify any particular number of rubdowns. It is clear that the city's demurrer to this count must be sustained, by virtue of the provisions of paragraph 22 of the specifications, because the count relates to a dispute within the province of the chief engineer to settle.

The twenty-second count is based upon alleged, arbitrary, unwarranted, and unreasonable delay of the chief engineer of the city in inspecting and accepting the work and issuing a certificate, causing, as is alleged, additional loss to the contractor, due to enforced suspension of the work until the certificate was issued. The claim for damages is not based upon a refusal to issue the certificate at all, but simply that the chief engineer was not justified in withholding it as long as he did, to wit, 40 days, after the contractor notified him that the work was completed. Paragraph 78 of the specifications provides that: "Whenever, in the opinion of the Engineer, the Contractor shall have completed the work in an acceptable manner in accordance with the terms of the contract, the Engineer shall make a final inspection of the entire work and, upon completion of all necessary repairs or renewals, he shall certify to the City in writing as to said completion, and shall further certify as to the entire amount of each class of work performed and as to the value thereof." While wide latitude is thus given to the chief engineer, it does not follow that he may arbitrarily consume an unreasonable length of time before completing his final inspection and rendering his certificate. Whether the delay in the present case was arbitrary is a question of fact, not governed by paragraph 22, but to be determined by the court. Thus, the demurrer to this count must be overruled.

Lastly, the twenty-third count relates to a matter, namely, the scale of wages to be paid by the contractor to his workmen, which is not covered by any provisions of the contract. Briefly stated, the claim under this count is that the city, through its chief engineer, agreed with the contractor that if he would increase his wage scale for common labor at the rate of 5 cents per hour, the city would permit him to make certain fills and "to spoil" certain material taken from a certain part of the dam excavation; and that the contractor, relying upon this agreement, did so increase his wage scale, resulting in additional expense of $36,000, but that the city, nevertheless, would not allow the contractor to make the fills or do the "spoiling," as just stated.

Paragraph 23 of the specifications permits the chief engineer "to make any additions to, omissions from, or alterations in the work as shown on the drawings and described in the Specifications, whenever he shall deem such additions, omissions or alterations necessary or desirable. * * *" But the right so to do by addendum No. 1 to the contract is expressly made subject to the approval of the public improvement commission, and there is no allegation that such approval has ever been obtained. Furthermore, the right to alter the contract, as authorized by this paragraph, does not appear to include alterations of the kind embraced in the twenty-third count, because that relates to changes in the prescribed work only, and without quoting its provisions which follow those which have been above quoted, we find no warrant for permitting the engineer to make a wage agreement such as the one in question, even with the approval of the public improvement commission. This, however, is a question which it is unnecessary to decide because such approval, which in any event is a condition precedent, is not alleged to have been obtained.

The contractor has proceeded on the theory that the subject-matter of this count falls within the contract. With this we cannot agree for the reasons just given. But should it be so construed, any claim for damages under the subject-matter of this count would apparently be barred by the provisions of the letter of August 25, 1931, because, presumably, the alleged wage agreement was entered into prior to the writing of that letter and its embodiment as part of the contract. But even if the letter of August 25th, 1931, be treated as not applicable, nevertheless, should the subject-matter of this count be treated as something done under the contract, the dispute relative thereto would clearly be governed by the provisions of paragraph 22. Therefore, from whatever angle we approach the question, the demurrer of the city to this count must be sustained.

Summarizing our conclusions, the demurrers of the city are sustained to all of the counts here involved, except the seventh and twenty-second counts.